RIGGS *et al.*, Respondents, *vs.* MYERS *et al.*, Appellants.

1. A will described land devised as the "south-east and south-west quarters of section 4, in township 60, range 38, in Holt county, Missouri." The devisee of the south-west quarter was to have access to the "Big Spring." *Held*, parol evidence that the corresponding quarter sections of township *fifty-nine*, in the same range and county, were intended to be devised, was admissible, it appearing that the "Big Spring" was upon the south-east quarter of section 4, in township fifty-nine, and that the testator never owned or claimed any land in section 4 of township 60.

## *Appeal from Holt Circuit Court.*

This was a suit brought by a portion of the heirs at law of George Stewart, deceased, for a partition of the south-east and south-west quarters of section four, in township fifty-nine, range thirty-eight, in Holt county, Missouri, as to which the said George Stewart was alleged to have died intestate. The defendants claimed that George Stewart, by his last will, devised the whole of said land to Mary, James and George W. Stewart, from whom they had purchased.

The only provisions in the will of George Stewart material to this case are the following:

1. It is my will and desire that all my just debts and the expenses of my last illness bo first promptly paid, and the residue of my estate be divided as hereinafter mentioned.

2. To my wife, Mary Stewart, I give the entire use and enjoyment of the south-west quarter of section four and the south-east quarter of section four, in township *sixty*, of range thirty-eight, lying in Holt county, Missouri, during her natural life, to have and to hold the same, and at her decease, to pass as hereinafter mentioned.

11. To my son, George W. Stewart, I give, at the decease of my wife, Mary Stewart, the south-west quarter of section four, in township *sixty*, of range thirty-eight, in Holt county, Missouri, with the privilege of using the water of the "Big Spring," having free access to and from it, as he may wish.

12. To James Stewart, I give the south-east quarter of section four, in township sixty, of range thirty-eight, in Holt county, Missouri, to have the same at the decease of my wife, Mary.

In addition to the above, there was a devise to Robert S. Stewart, of a quarter section of land upon which he lived, and a small pecuniary legacy to several of the testator's children and grand children. These were all the provisions of the will.

The defendants in their answer alleged that the draftsman of the will used the word "sixty" by mistake, instead of "fifty-nine," in the number of the township. At the trial, the defendants offered to prove that George Stewart, at the time of his death, owned no other land than the two quarter sections described in the petition and the quarter section devised to Robert S. Stewart; that he never owned or claimed any land in section four of township sixty; that there was no such land as the south-east and south-west quarters of section four, in township sixty, it being a fractional section, containing less than one hundred acres, and not subdivided into quarter sections; that the spring, commonly known as the "Big Spring," was located upon the south-east quarter of section four, in township *fifty-nine*, range thirty-eight; that George Stewart died upon said last named section; that his sons, George W. and James Stewart, always resided with him, and that his other children lived apart from him for many years before his death; and that the two quarter sections of land in controversy composed at least three-fourths in value of his whole estate.

All this evidence was excluded, and after a judgment of partition, the defendants appealed to this court.

*W. P. Hall*, for appellants. The court erred in excluding the evidence offered by the defendants. In order to ascertain the testator's intention, we must look at the whole will, and must also inquire into all the circumstances which surrounded him when he made his will. Parol evidence as to the nature, marks, qualities, &c., of the subject devised is always admissible. (1 Greenl. Ev. §286-7, 289. *Smith* v. *Bell*, 6 Pet. 74.

Riggs *v.* Myers.

13 Pet. 89. 7 Met. 205, 208, 209. 7 Met. 418. 2 Starkie's Ev. 753, 768–9, 770, 1268. Wigram on Ev. §9, 17, 61, 62, 64, 67, 70, 76, 105, 180.) The evidence was admissible under the rule, "*falsa descriptio non nocet, cum de corpore constat.*" After rejecting the name of the township, enough remains in the will to show the property intended to be devised. (2 Vernon, 593. 1 Vesey, sr., 254. 1 Vesey, jr., 259. 3 Vesey, jr., 306. 3 Watts, 391. 2 Greenleaf's Rep. 325. 9 N. Hamp. 58. 4 Mass. 205. 6 Johns. Ch. R. 607. 2 Dana, 49. 22 Wend. 150. 21 Wend. 653. 19 Johns. 449. 1 Wend. 548. 1 Richardson, 140. 2 Story, 286. 5 Greenl. Rep. 325. 2 N. Hamp. 285. 7 Vermont, 511. 13 Maine, 114. 8 East, 160. 1 Greenl. Ev. §301. 5 N. Hamp. 58.ı 22 Pick. 410. 4 Metcalf, 84. 2 Starkie's Ev. 770.) The evidence was admissible under the rule that parol evidence is admissible to explain a latent ambiguity. The description in the will applies to no object in every particular, but in some particulars it applies to one object, and in some to another. (1 Phill. Ev. 531, 532, 533. 6 Peters, 345. 9 Howard, 484. 5 Mees. & Wels. 363, 367. 5 Eng. Com. Law Rep. 408. 1 Johns. Ch. Rep. 190. 3 Taunton, 155. 2 Russ. & Mylne, 232. 3 Halstead, 72. Wigram on Ev. §184, 186.)

Mr. *Vories*, for respondents. The evidence offered by the defendants was properly excluded. The intention of the testator is to govern, but it must be gathered from the words used by him in his will, and effect must be given to every clause and word in the will. Parol evidence is never admissible to show that he intended to devise a particular thing, and by mistake devised a different thing. This would be to repeal the statute concerning wills. (1 Johns. Ch. Rep. 231. 7 Monroe, 629. 2 A. K. Marsh. 51. *Davis v. Davis,* 8 Mo. Rep. 56. 4 Dessaus. 215. 7 Metcalf, 188. 1 Paige's Ch. Rep. 291. Roberts on Frauds, 15.) Parol evidence is only admissible in the case of a latent ambiguity or a false description. In the first case, it neither takes from nor adds to the words of the will, but points out the person or thing to which those words

apply. (11 Johns. Rep. 215. 7 Metcalf, 185. 4 Vesey
Ch. Rep. 675. 1 Story's Eq. §179. 10 Bacon's Abridg.
(Wills, G.) Talbot's Cases, 240. 1 Greenl. Ev. §290.
*Carson* v. *Chew*, 7 Gill & J. 127.) The second case is
where the object of the devise has been once sufficiently de-
scribed without the description which is false. In this case,
the false description is rejected, and the will stands, if the de-
scription left is sufficiently certain. If not, the will is void
for uncertainty. (11 Johns. Rep. 218. Wigram on Wills,
17.) The defendants in their answer ask to show, not a latent
ambiguity or a false description, but a *mistake*, which is never
allowed. (6 Conn. Rep. 270.)

SCOTT, Judge, delivered the opinion of the court.

1. This is a plain case. The application of the undoubted
rules as to the admission of extrinsic evidence in the interpreta-
tion of wills, places the matter in a clear light. One of the
rules referred to is this : that, for the purpose of determining the
object of a testator's bounty, or the subject of disposition, or
the quantity of interest intended to be given by his will, a court
may inquire into every material fact relating to the person who
claims to be interested under the will, and the property which
is claimed as the subject of disposition, and to the circumstan-
ces of the testator, and of his family and affairs, for the pur-
pose of enabling it to identify the person or thing intended by
the testator, or to determine the quantity of interest he has
given by his will. (Wigram on Wills, 51.) The evidence al-
lowable under this rule, and which was offered by the appellants,
in connection with the words of the will, shows, beyond all
doubt, what property was intended by the testator to be given
to his devisees.

It is also a rule that a redundant and superfluous descrip-
tion, which is inapplicable to an object well ascertained by pre-
vious or subsequent description, will not prevent the applica-
tion of parol evidence to show what object was contemplated
by the testator. (3 Starkie, 1024.) If the number of the

township had been omitted by the testator, there would have been no doubt about the land he intended to devise. The inaccuracy or mistake in a description which is superfluous, cannot make a devise void for uncertainty.

There is a distinction between an inaccuracy and an ambiguity of language. Language may be inaccurate without being ambiguous, and it may be ambiguous though perfectly accurate. If, for instance, a testator, having a leasehold house in a given place, and no other house, were to devise his freehold house there to A. B., the description, though inaccurate, would create no ambiguity. If, however, he were to devise an estate to J. B., of D., son of Thomas, and there were two persons to whom the entire description accurately applied, this description, though accurate, would be ambiguous. It is obvious therefore, that the whole of that class of cases in which an inaccurate description is found to be sufficient, merely by the rejection of the words of surplusage, are cases in which no ambiguity really exists. The meaning is certain, notwithstanding the inaccuracy of the testator's language. The language may be inaccurate, but if the court can determine the meaning of this inaccurate language, without any other guide than a knowledge of the simple facts upon which, from the nature of language in general, its meaning depends, the language, though inaccurate, cannot be ambiguous. (Wigram on Wills, 58.)

Now, with the knowledge of the simple fact that the testator owned no other lands than the home place and the two quarter sections in controversy, can any one doubt what was intended by the words of the will. He devises his estate. The words are, the residue of my estate. He did not intend to give away any thing which did not belong to him ; what he designed to give was his own. Can we suppose, against his solemn declaration, that he meant to die intestate as to the greater portion of his estate ? But does not the reference to the spring, taken in connection with the fact that there was such a spring on the land he owned, place this matter beyond all dispute ?

From the principles which have been stated, it is obvious

that the testimony offered was admissible, and that testimony, when produced, could leave no doubt that, by his will, the testator passed the land in controversy.

This is no attempt to prove an intention when the words of a will are ambiguous. The result attained is derived from the words of the will itself, merely by enduing ourselves with a knowledge of the circumstances which surrounded the testator in making it.

The other judges concurring, the judgment will be reversed, and the cause remanded.