DORA McMAHAN et al. v. NANNIE E. HUBBARD, Appellant.

Division Two, March 30, 1909.

1. **WILL: Presumption: To Devise All Property.** The presumption is that the testator intended to dispose of his whole estate. Where there is a general intention appearing in the will to thereby make a complete disposition of all of testator's property, such general intention is allowed weight in determining what was intended by a particular devise that may admit of enlargement or limitation.

2. ———: ———: ———: **Supplying Words.** To prevent the happening of the incongruous condition of an estate passing partly by descent and partly by devise, words may be supplied, transformed or changed in the will, so that the instrument may not perish or the manifest intention of the testator be not defeated by a palpable error of the scrivener.

3. ———: **Property Devised: Evidence of Attendant Facts.** For the purpose of determining the object of the testator's bounty, or the subject of disposition, or the quantity of interest to be given by his will, the court may inquire into every material fact relating to the person who claims to be interested under the will, or to the property which is claimed as a subject of disposition, or to the circumstances and affairs of the testator and of his family. Such evidence is competent for the purpose of enabling the court to identify the devisee or the thing devised and to determine the quantity of interest intended by the testator to be given. The court may admit parol evidence to show what lands testator had at the time of the making of his will and at the time of his death, and what lands mentioned therein he did not own.

4. ————: **No Description of Devised Land.** Where the will·
gave to the wife, an unmarried daughter and an adopted son,
certain lands described by quarter sections and a fence but
omitting the number of the section, it is competent to show by
parol evidence that if section 28 is understood, the description
exactly fits testator's home place, that it gave to them 130 acres
in one body, and that if the will meant lands located in sec-
tion 33 in which 23 other acres given to them in the same clause
is thereby located it gave to them land that he never owned.
It is also competent to show that he had a married son and
a married daughter to whom he gave other properly described
tracts disconnected from the home place. And it is held, in
this case, that the testator intended to give to the wife, un-
married daughter and the adopted son the land in section 28, al-
though the will does not mention the number of the sec-
tion.

5. ————: ————: **Latent Ambiguity.** As an application of the
rule that a latent ambiguity in a written instrument may be
removed by extrinsic evidence, parol evidence is competent to
show that the description of land devised by the will was an
incorrect and imperfect description, and to correct the descrip-
tion according to the testator's manifest intention.

6. ————: ————: ————: **This Will.** Item three of the will
read: "In order that my wife, my daughter Leah and my
adopted son William, may have ample support, I give and be-
queath unto them the following described land, viz.: Seven
acres, part of southwest quarter of southeast quarter, also the
northwest quarter of the southeast quarter, also the east one-
half of the southwest quarter and that part of the west half of
the southwest quarter lying east of the present fence running
on the east side of said tract; also the twenty-three acres,
being a part of the northeast quarter of the northwest quarter
of section 33, all in township 25, of range 31." *Held*, first, that
it is not necessary to supply the words "section 28" to the de-
scription of the lands preceding the description of the 23-acre
tract, but all that is necessary is to confine the words "sec-
tion 33" to the 23-acre tract, in immediate connection with
which it is used; *second,* parol evidence is admissible to show
that testator owned 130 acres of land in section 28 which con-
stituted his home place, and that the description used accur-
ately describes that place except that the section number is
omitted, and that he did not own any land of that description
in section 33; *third,* the description of the home place, in the
light of this parol evidence, is sufficient to identify the lands
intended to be devised to the three devisees named, and the
will passed the lands to them; and, *fourth,* this conclusion is
strengthened by the presumption of law that testator did *not*

217 Sup—40

intend to die intestate as to this valuable tract, and by a parol showing that it was not devised to anyone unless it passed by this item of the will, and is also strengthened by the fact that it accords with his expressed purpose to provide. an "ample support" for them, whereas unless he gave them this tract he gave them nothing.

7. ————: **Precedent or Subsequent Condition.** Whether the condition in the will that the adopted son should "remain with his adopted mother until he is twenty-one years of age and behave towards her as a dutiful son" was a precedent or subsequent condition, it is unnecessary to decide, if the son fulfilled the condition. The mere fact that he married before he was twenty-one, if he continued to live on the place and provide for his mother, was no breach of the condition.

8. ————: **Probate: Codicil: One Certificate.** Where the original will and the codicil thereto were written upon the same sheet of paper, and the probate court by his certificate thereto attached certified he had examined the said instrument, heard the evidence of the subscribing witnesses and adjudged the same to be the last will and testament of the testator, it will be held that he probated both the will and codicil.

9. **SUIT TO DETERMINE TITLE UNDER WILL: Pending Suit to Contest Codicil: Abatement.** Plaintiffs brought suit to determine title to certain lands under a will. Prior to that time defendants had filed suit against these plaintiffs to contest a codicil to the will, but no service had been had, but defendants filed a plea in abatement to the trial of this cause, basing their plea on the pendency of that contest. But this cause was tried without any objection or a request for a continuance. During the trial the defendants obtained an *alias* summons in that contest suit, but raised the pendency of that suit only as a defense to the merits of the case. *Held,* that the court committed no error in refusing to abate this cause until the trial of the alleged contest over the codicil.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston,* Judge.

AFFIRMED.

   *Horace Ruark, James H. Pratt* and *George Hubbert* for appellant.

(1) The land being described in the will as in section 33, it was error for the court to admit extrinsic evidence to show that the testator intended

to convey land in section 28, other and different land from that described. Even a court of equity cannot reform a 'will or a gratuitous devise therein upon the ground of mistake. It does not stand upon the ground of mistake in executing or making a contract for a valuable consideration. Goode v. Goode, 22 Mo. 518; Kurtz v. Hibner, 55 Ill. 514; Lomax v. Lomax, 218 Ill. 629; Howard v. Evans, 24 App. D. C. 127; Oliver v. Henderson, 121 Ga. 836; In re Lynch Estate, 142 Cal. 373; Godfrey v. Wingert, 189 Ill. 500; McGovern v. McGovern, 75 Minn. 314; Engelthaler v. Engelthaler, 196 Ill. 230; Hull v. Hull, 9 Ohio Cir. Dec. 19; Jennings v. Brizeadine, 44 Mo. 332; Sturgis v. Work, 122 Ind. 134; Starkweather v. American Bible Society, 27 Ill. 50; Van Vachten v. Sill, 11 Johns. 201; Ehrman v. Haskins, 67 Miss. 192. But this is a law case, and the surplusage in the petition relating to a supposed error in drafting the will cannot be regarded as changing the nature of the action into an equitable one, nor confer authority to reform the will or construe it. If, however, the section number given applied apparently to the last forty-acre tract alone, then the defect is patent upon the face of the will itself and extrinsic evidence is not admissible to remove such a defect. For there is no general description to be applied. Mudd v. Dillon, 166 Mo. 110. There must be a latent ambiguity before the courts can resort to parol evidence to determine the testator's intention. Krechter v. Grofe, 166 Mo. 385; Morris v. Hall, 102 Mo. App. 449; Hawkins v. Garland, 76 Va. 149; Moreland v. Beady, 8 Ore. 303; Hart v. Stover, 164 Pa. 523; Hand v. Hoffman, 8 N. J. L. 76; Brown v. Quintal, 177 N. Y. 75; Stoner v. Freeman, 6 Mass. 435; Marshall v. Haney, 4 Md. 498; Hill v. Felton, 47 Ga. 455; Chambers v. Ringstaff, 69 Ala. 140; Decker v. Decker, 121 Ill. 341. And the fact that the testator did not own the land devised but owned other land to which the description would apply by the addition

or alteration of a number does not change the rule or make parol evidence admissible for such purpose. Lomax v. Lomax, 218 Ill. 629; In re Lynch, 142 Cal. 373; Sturgis v. Work, 122 Ind. 134; Funk v. Davis, 103 Ind. 281; Fitzpatrick v. Fitzpatrick, 36 Iowa 674; Nevins v. Martin, 30 N. J. L. 465; Kurtz v. Hibner, 55 Ill. 514; Bishop v. Morgan, 82 Ill. 351; Bingel v. Volz, 142 Ill. 214; Judy v. Gilbert, 77 Ind. 96; Mc-Govern v. McGovern, 75 Minn. 314; Sherwood v. Sherwood, 45 Wis. 357; Starkweather v. American Bible Society, 27 Ill. 50; Senger v. Senger, 81 Va. 687; Jones v. Quattlebaum, 31 S. C. 608; Oades v. Marsh, 11 Mich. 168; Cleveland v. Havens, 78 Am. Dec. 90; Wilkins v. Allen, 18 How. 385; Warner v. Miltenberger, 21 Md. 264; Waugh v. Waugh, 28 N. Y. 94; Best v. Hammond, 55 Pa. 409. Only one description of the land is given in the McMahan will, if this is rejected, nothing is left by which to identify the land. The question thus presented is radically different from that presented by a line of cases where two contradictory descriptions are given in a will and where it is held that one of the descriptions may be rejected and the land identified by the other. (2) It was error for the court to attempt to adjudicate the title while contest of the codicil to the will, materially altering the apparent interests of the parties, was pending. The effect of such contest was to vacate the action of the probate court, or at least suspend its operation, and have the question tried anew in the circuit court, as if on appeal. Hogan v. Hinchey, 195 Mo. 527; State ex rel. v. Guinotte, 156 Mo. 513; Schaff v. Peters, 111 Mo. App. 488; Benoist v. Murrin, 48 Mo. 48; Lamb's Admr. v. Helm's Admr., 56 Mo. 432. And the statutory contest is the only proceeding in or by which the issues thus made can be tried. Stevens v. Oliver, 200 Mo. 514; Stowe v. Stowe, 140 Mo. 594; Jourden v. Meier, 31 Mo. 40; Stevens v. Larwell, 110 Mo. App. 159. The pendency of the suit to contest the

codicil was properly set up in the answer. Matters in bar and in abatement should be pleaded in the answer, along with matters going to the defense of the merits of the action. And it was error for the court to exclude the evidence thereof or ignore issues thereon. Cohn v. Lehman, 93 Mo. 574; Baxter v. Railroad, 198 Mo. 1; Little Rock Trust Co. v. Railroad, 105 Mo. 682; Meyer v. Insurance Co., 184 Mo. 481; 1 Ency. Pl. and Pr., 1. The probate of the codicil was had August 24th. On August 26th plaintiffs filed their present suit and August 30th defendants filed suit to contest the codicil. Summons was served upon defendants August 30th.

*R. M. Sheppard* and *John T. Sturgis* for respondents.

(1) The presumption is that the testator meant to dispose of his whole estate and not to die intestate as to any part of it. And to prevent the incongruous condition of the estate passing partly by will and partly by descent, words may be supplied, transposed or rejected, and where this can be done descriptions will be so corrected and interpreted as to include the whole property. Robards v. Brown, 167 Mo. 447; Willard v. Darrah, 168 Mo. 670; Whitcomb v. Rodman, 156 Ill. 116; Hurst v. Von De Veld, 158 Mo. 248; Watson v. Watson, 110 Mo. 171; Simons v. Cabanne, 177 Mo. 336; Meiners v. Meiners, 179 Mo. 614; Grace v. Perry, 197 Mo. 560; Korf v. Gerichs, 145 Ind. 134; Carney v. Kain, 40 W. Va. 758. (2) Extrinsic and parol evidence is always admissible to show what land the testator owned at the time of making the will and at his death, and it is presumed that he intended to convey his own land and not that of another. Board of Trustees v. May, 201 Mo. 368; Patch v. White, 117 U. S. 210; Riggs v. Myers, 20 Mo. 243; Creasy v. Alverson, 43 Mo. 22; Wolf v. Dyer, 95 Mo. 550; Pres-

nell v. Headly, 141 Mo. 193; Stewart v. Stewart (Iowa),
65 N. W. 976; Eckford v. Eckford (Iowa), 58 N. W.
1093; Pate v. Bushong (Ind.), 63 L. R. A. 602 (over-
ruling Sturgis v. Work, 122 Ind. 134, and Funk v.
Davis, 103 Ind. 281, cited by appellants); 2 Underhill
on Wills, 1008.   (3)  Aided by the foregoing rules,
the court will, with the aid of extrinsic evidence, put
itself in the situation of the testator, apply the descrip-
tion given in the will to the *locus in quo,* ascertain the
intention of the testator, and carry out that intention
even if it be necessary to reject some words and sup-
ply others, reject a particular description and use a
general one, or *vice versa,* and, in a word, give to the
person designated the property intended.   Thompson .
v. Thompson, 115 Mo. 68; Briant v. Garrison, 150 Mo.
670; Hoffman v. Reil, 27 Mo. 554; Wolf v. Dyer, 95
Mo. 550; Riggs v. Myers, 20 Mo. 243; Board of Trus-
tees v. May, 201 Mo: 360; Willard v. Darrah, 168 Mo.
660; Creasy v. Alverson, 43 Mo. 13; Gordon v. Burris,
141 Mo. 611; Seebrock v. Fedawa (Neb.), 50 N. W.
270; Whitcomb v. Rodman, 156 Ill. 116, 28 L. R. A. 149
(overruling Bingle v. Volz, 142 Ill. 214, cited by ap-
pellants); Pate v. Bushong (Ind.), 63 L. R. A. 593
(overruling Sturgis v. Work, 122 Ind. 134, and Funk
v. Davis, 103 Ind. 281, cited by appellants); Patch
v. White, 117 U. S. 210; Wheat v. Pope (In re Pope's
Estate), (Minn.), 97 N. W. 1046; Merrick v. Merrick,
37 Ohio St. 132; Covert v. Sebern (Iowa), 35 N. W.
636; Stewart v. Stewart (Iowa), 65 N. W. 976; Flynn
v.  Holman  (Iowa),  94  N. W.  447;  Eckford  v.
Eckford, 58 N. W. 1093, 26   L. R. A. 370; Tobin
v. Tobin (Ind.), 69 N. E. 440; Priest v. Lackey,
140 Ind. 399; Huffman v. Young, 170 Ill. 290;
Page on Wills, p. 976, sec. 819.   (4)  The descrip-
tion in a will of land not owned by the testator
creates a false description which will be rejected.
*Falsa demonstratio non nocet.*  It creates a latent am-
biguity which may be removed by extrinsic evidence.

"It is settled doctrine that as a latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence," and it arises when "the thing does not belong to the testator." Patch v. White, 117 U. S. 210; Pate v. Bushong (Ind.), 63 L. R. A. 601; Page on Wills, p. 976, sec. 819; Whitcomb v. Rodman, 156 Ill. 116; Cleveland v. Spillman, 25 Ind. 95; Govin v. Metz, 79 Hun 461; Peters v. Porter, 60 How. Pr. 422; Rook v. Wilson, 142 Ind. 24. (5) If the testator does not own the land particularly described in the will, then the court can reject such part of the description as is shown to be false when applied to the *locus in quo;* and if enough remains to identify the land owned by the testator, by the aid of extrinsic evidence, then the devise will be upheld. Any expression in the will indicating that the land meant to be devised was owned by testator; any reference to external objects or monuments, and even the size or shape of the whole, or some particular part of the land devised, will be seized upon as identifying the land. Briggs v. Myers, 20 Mo. 239; Creasy v. Alverson, 43 Mo. 13; Rogers v. Rogers, 78 Ga. 688; Pocock v. Redinger, 108 Ind. 573; Bowen v. Allen, 113 Ill. 53; Hunt v. Devling, 8 Watts 403; Decker v. Decker, 121 Ill. 341; Wheaton v. Pope, 91 Minn. 299; Priest v. Lackey, 140 Ind. 399; Zirkle v. Leonard, 61 Kan. 636; Stewart v. Stewart, 96 Iowa 620; Wright v. Collins, 16 Ont. Rep. 182; Hickey v. Hickey, 20 Ont. Rep. 371; Page on Wills, sec. 487, p. 571. This principle is clearly recognized in such cases as Lomax v. Lomax, 218 Ill. 629, 6 L. R. A. (N. S.) 942, and Sturgis v. Work, 122 Ind. 134, relied on by appellants. (6) It is not even necessary for the court to supply "section 28" as applied to the descriptions preceding the twenty-three-acre tract. It can so construe and read the will as to confine the words "section 33" to the twenty-three-acre tract in immediate connection with which it is used. Then the remainder of the land is correctly described except that the sec-

tion in which it is located is not designated. In such cases extrinsic evidence is admissible to supply the deficiency by showing in what section the testator owned land of that description. Page on Wills, p. 976, sec. 819; Chambers v. Watson, 60 Iowa 339; Flynn v. Holman, 119 Iowa 731; Chambers v. Rigstaff, 69 Ala. 140; Black v. Richards, 95 Ind. 184; Pate v. Bushong (Ind.), 63 L. R. A. 593; Moreland v. Brady, 8 Ore. 303; Whitcomb v. Rodman (Ill.), 28 L. R. A. 149 (with note saying this case overrules Bingle v. Volz, 142 Ill. 214, cited by appellant); Case v. Young, 3 Minn. 209. (7) Whenever such wills are brought in controversy courts of law hear the evidence and correct, or rather treat as corrected, all such errors in description without any resort to a court of equity. Thompson v. Thompson, 115 Mo. 56; Briant v. Garrison, 150 Mo. 670; Patch v. White, 117 U. S. 210.

GANTT, P. J.—This action was commenced in the circuit court of Newton county to determine the title to certain lands in said county. The plaintiffs claimed title to the lands in controversy under and by virtue of items three and eleven of the last will and testament of John McMahan, deceased, who is the common source of title, and the first section of the codicil to said will.

The said provisions of the will are in these words:

"3. In order that my wife, my daughter Leah and my adopted son William McMahan, may have ample support, I give and bequeath unto them, the following described land, viz: Seven acres, part of the southwest quarter of the southeast quarter, also the northwest quarter of southeast quarter, also the east one-half of the southwest quarter and that part of the west one-half of the southwest quarter lying east of the present fence running on the east side of said tract; also the twenty-three acres, being part of the

northeast quarter of the northwest quarter of section 33, all the above land in township 25 of range 31.

"II. All the property herein bequeathed shall descend to the heirs of the bodies of those to whom it is bequeathed, provided said heirs are born in lawful wedlock and should any of my legatees die without heirs of their body as above stated, then all the property bequeathed to them shall descend to my legal heirs."

Codicil: "In explanation of section 3, where the bequeath is to my wife and daughter Leah and adopted son William McMahan, at the death of my wife, the real estate herein mentioned is to descend to my daughter Leah and William McMahan (adopted son)."

The plaintiffs, who are the wife and child of William McMahan, deceased, alleged in their petition that the land intended to be described and conveyed by the third clause of the said will to the testator's wife, daughter Leah, and adopted son, William McMahan, is the land in controversy herein, and that by mistake the scrivener in writing the will failed to designate that all of said land described in said third item of the will is in section 28, except the last described tract of twenty-three acres, which is properly described as being in section 33. The defendants in their answer allege that the said John McMahan made no disposition in his last will of the part of the land in controversy, which is located in section 28; that as to this land, he died intestate. The defendants also said in their answer that all the bequests and gifts made to the said William McMahan by the said will were made upon the following terms and conditions set forth in the seventh item of said will in the following language, viz: "7. All the bequests made to him are conditioned that he remain with his adopted mother until he is twenty-one years of age and behaves himself toward her as a dutiful son." And it is asserted that the said William McMahan failed and refused

to comply with the said terms or provisions of said will and by his conduct and action forfeited any and all bequests under the terms and provisions of said will.

The cause was tried in the circuit court of Newton county, and at the trial it was agreed that John McMahan died on the — day of ——, 1888, and that he left surviving him his widow, Elizabeth McMahan, who died on the 29th of July, 1904; that he also left surviving him as his only heirs at law J. Raphael McMahan, who is a son by a former marriage, his daughter Leah McMahan, now Leah Goin, and his daughter Nannie E. Hubbard; that William McMahan mentioned in the will as his adopted son died on or about the 25th of December, 1901, leaving as his heirs his widow Dora McMahan and his children, Logan, Floyd, Noble and Duard McMahan, all plaintiffs herein. That the defendant Commodore Thomas is the only child of Leah Goin. The evidence on the part of the plaintiff tended to show that the testator John McMahan at the time he executed his will and at the time of his death and for many years prior thereto, owned the land in suit in section 28, township 25, range 31, and at the time of the execution of his will, nor any other time, did he own any land in section 33 except the twenty-three-acre tract described in said will as being a part of the northeast quarter of the northwest quarter of section 33 and the forty-acre tract west of said twenty-three acres, which he devised to his son J. R. McMahan in the ninth item of the will. The evidence also tended to show that if section 33 should be held to be a part of the description of all the land described in item three of the will then all of it except the twenty-three-acre tract was at the time the said will was executed and at the time of the death of the testator owned by T. B. Durham and James Hubbard. A plat of section 33 and of a part of section 28 will accompany this opinion.

NORTH

Fig 1, showing land owned by John McMahan.

Center of Sec 28

LOT 4

WAGON

HOUSE

POR. McMAHAN

HOUSE 7 ACRES

SECTION LINE

J.R. McMAHAN LAND

FENCE

ELIZABETH McMAHAN 23 ACRES

LAND CORRECTLY DESCRIBED WILL

LAND MIS-DESCRIBED

Heavy outline shows land in controversy.

DURHAM

LAND

Center of Sec. 33

MISSOURI LAND AND

JIM HUBBARD LAND

LIVE STOCK Co

Fig 2. showing misdescription

The plaintiffs are claiming title to that part of the land shown by said plat which is inclosed in the black dotted lines. The evidence clearly demonstrated that the land in which the plaintiffs claim an interest in this suit belonged to John McMahan at the time his will was executed and at the time of his death, and that that part of said land contained in section 28 would have been the identical land described in item three of the will, if the scrivener who drew the will had inserted the words "section 28" just after the words "and that part of the west half of the south-west quarter." The testimony disclosed that the lands owned by John McMahan as his home farm was a compact body of land mostly in section 28 and the balance in section 33 immediately south. The house in which he and his family lived was and is on the part of the farm in section 28 and was occupied by his widow until her death in 1904. His wife, daughter Leah and adopted son were the members of his family living at home when the will was made. In his will he expressed the intention of providing that his family should have "ample support" and to this end devised 130 acres of land by description. To his daughter, Nannie Hubbard, he gave land which was not a part of the home farm; to his son J. R. McMahan, who was married and living on the land given him by the will, he gave three forty-acre tracts extending north and south along and constituting the western part of the farm. Two of these forty-acre tracts are in section 28, and one in section 33, and are correctly described in the will. After deducting these special devises to his daughter Nannie Hubbard and his son J. R., there was left the 130 acres with the residence on it.

The evidence also showed there was at that time and yet is a fence dividing the land occupied by and given to J. R. McMahan, from the balance of the home place. This fence was somewhat irregular and did

not follow the subdivision lines, but ran east of the same, cutting off a few acres of land from the J. R. McMahan tracts, to-wit: the northwest of the northwest of section 33 and west half of the southwest of section 28. This fence was in the mind of the testator when he made his will, as he says he gives to his son J. R. McMahan the west half of the southwest quarter of section 28 "west of the present fence" and the northwest quarter of the northwest quarter of section 33 "lying west of the present cross-fence.'" In item three he devises to the plaintiffs "that part of the west half of the southwest quarter lying east of the present fence running on the east side of *said tract*," but omits the number of the section. The testator also owned at that time, in section 28, a seven-acre tract, part of 'the southwest of the southeast quarter, and this he also devised to his wife, daughter and adopted son, but omitted the section also in that description.

I. Among the cardinal rules often invoked by this court in the construction of wills is the presumption that the testator intended to dispose of his whole estate. This presumption seems to amount to this, that where there is a general intention appearing in the will to thereby make a complete disposition of all of the testator's property, such general intent is allowed weight in determining what was intended by a particular devise that may admit of enlargement or limitation. [Watson v. Watson, 110 Mo. l. c. 171.] Whatever may be the rule in other States, it is 'well established in this State that in pursuing the general presumption and to prevent the happening of the incongruous condition of the estate passing partly by will, and partly by descent, words may be supplied, transformed or changed in the will so "that the instrument may not perish and the manifest intent of the parties be not defeated by the palpable error of·

the scrivener.'' [Thomson v. Thomson, 115 Mo. 1. c. 67; Briant v. Garrison, 150 Mo. 1. c. 668; Rines v. Mansfield, 96 Mo. 398; Presnell v. Headley, 141 Mo. 194; Robards v. Brown, 167 Mo. 447.] ·

It is also well settled in this State that for the purpose of determining the object of the testator's bounty or the subject of disposition, or the quantity of interest intended to be given by his will, the court may inquire into every material fact relating to the person who claims to be interested under the will and the property which is claimed as a subject of disposition, and to the circumstances of the testator and of his family and affairs for the purpose of enabling it to identify the person or thing intended by the testator or to determine the quantity of interest he has given by his will. [Riggs v. Myers, 20 Mo. 239.] In the last-mentioned case a will described land devised as the southeast and southwest quarter of section 4 in township *60*, range 38 in Holt county, Missouri, the devisee to have the privilege of using water of the big spring with free access to and from it as he might wish, and it was held by this court that parol evidence that the corresponding quarter sections of township 59 in the same range and county were intended to be devised, was admissible, it appearing that the big spring was upon the southeast quarter of section 4, township *59*, and that the testator never owned or claimed any land in section 4 of township 60. [Willard v. Darrah, 168 Mo. 660.] Under this adjudication, we think the court properly admitted parol evidence to show what lands the testator in this case had at the time of making his will and at the time of his death.

And when this evidence is considered, we think the will taken as a whole shows a clearly expressed purpose on the part of John McMahan to dispose of all his property, real and personal, and we think it is also a fair presumption that, as he owned no

other real estate outside of his home place except that which he devised to his son J. R. and his daughter Nannie Hubbard, there can be little doubt that he intended to give to his wife and his daughter Leah and his adopted son, this home place. He was devising his own estate and he did not intend to give away anything which did not belong to him, and yet if the contention of the defendants is true, he would have been devising the land which belonged to his neighbors Durham and Hubbard, and the Missouri Land and Live Stock Company, which he did not own at the time. Again to sustain the defendants we must reach the conclusion that the testator meant to die intestate as to a very large part of his estate, a conclusion, which we have seen, the law would never presume especially where the decedent makes a will as John McMahan did in this case.

In the third item of the will, the testator says that he makes provision for his wife and daughter Leah and his adopted son to have "ample support" out of the lands, which he devised to them. Certainly he could not have, for one moment, supposed that he provided an "ample support" for them out of the twenty-three acres of land in section 33, and yet he must have known that this was all the land he owned in section 33 at that time. The bare statement of the proposition shows that it is a most unreasonable and unnatural construction of the language used by the testator. He had described 130 acres of land, only twenty-three acres of which was in section 33. It is readily seen that the real point in controversy in this case is whether it was competent for the circuit court to admit parol evidence to show that the description of the land devised to the wife and daughter Leah and their adopted son, if section 33 was a part of said description, was described land owned by the testator, and thereby to show that the description was

false if it should be held that all the said lands were in section 33. While there has been great conflict in the authorities as to how far a court can go in receiving testimony to show that the words used in a will are an incorrect description of land devised, we think the rule announced by Judge Scott in Riggs v. Myers, 20 Mo. 243, has become the settled law of this State, and such evidence is admissible to show a latent ambiguity, and when this is done the rule is well settled that a latent ambiguity may be removed by extrinsic evidence. In Willard v. Darrah, 168 Mo. l. c. 670, this court approved the rule laid down in 2 Underhill on the Law of Wills, section 910, in these words: "In every case the court is entitled to be placed in possession of all the information which is available of the circumstances of the estate and family of the testator when he made his will, to the end that the court may be in his situation as nearly as may be, and may interpret and understand the will as he would if he were living. When the evidence of extrinsic circumstances is all in, it may appear that a description in the will which was intended by the testator to apply to one object or thing is applicable, with more or less certainty, to several objects or things. This is a case of latent ambiguity, and parol evidence is then received to ascertain which person or thing was intended by the testator. Where the ambiguity is latent, it is created by evidence of extrinsic facts, and the same evidence is admissible to remove it." In Page on Wills, section 819, it is said: "Where testator describes the property devised by township, range, section and quarter section, but does not locate it in the correct section or range or the like, the weight of authority is that extrinsic evidence is admissible to show exactly what real estate the testator owned. Under this view, if he owns any real estate which corresponds in part to the description in the will, the court will reject the incorrect part of the description

and will pass the realty conveyed by the correct description.'' In the very exhaustive discussion of this question by the Supreme Court of Indiana in Pate v. Bushong, 63 L. R. A. 593, that court cited with approval the decision of this court in Riggs v. Myers, 20 Mo. 239, and numerous other cases which supported the text of Page above cited. The court added: ''There are some cases which seem to hold that when the evidence of the circumstances, situation, surroundings, and property owned by the testator at the time he made his will shows that the testator did not own the land as described in his will, but owned other land to which a part of the description might properly apply, no latent ambiguity was disclosed, unless the words 'my land,' or other words stating in effect that the testator owned the land devised, are contained in the will. The rule established by the weight of the authorities, and the better reason, however, is that such evidence does disclose a latent ambiguity, whether words stating, in effect, that the testator owned the lands devised are used or not; and if, by rejecting the false description or the false part thereof, sufficient remains, when considered from the position of the testator, to identify the land intended with reasonable certainty, the same will pass under the will to the devisee. It is true that, after rejecting the false description or the false part thereof, the words 'my real estate,' or words of like import, if used by the testator in making the devise, would be of great force in identifying the land intended, and might, alone or in connection with the true part of the description, if any, pass the land to the devisee, in cases where, if the words were not used, the devise would fail for want of a description sufficient to identify the land. The enforcement of this rule does not reform or add any words to a will, for this cannot be done, but enables the court to construe the will after rejecting

217 Sup—41

the false part of the description, and thus carry into effect the intention of the testator as expressed therein.'' A leading case on this subject is Patch v. White, 117 U. S. 210. The testator gave to his children a lot described ''as lot numbered six in square 403, together with the improvements thereon erected.'' The parol evidence disclosed that the testator did not have or own lot six in square 403, and that the same had no improvements thereon, but he did own lot *three* in square 406, which had a house thereon, and it was held that this raised a latent ambiguity and the evidence taken in connection with the context of the 'will was sufficient to show there was an error in the description and the lot really devised was lot three in square 406. Numerous other cases might be cited, but would subserve no good purpose.

Now applying the foregoing principles to the case in hand, it is not necessary for this court to supply the words ''section 28'' as applied to the description of the lands preceding the twenty-three-acre tract. All that is necessary is to confine the words ''section 33'' to the twenty-three-acre tract, in immediate connection with which it is used, and this we do because the evidence abundantly established that the testator did own seven acres, a part of the southwest of the southeast, and the northwest of the southeast quarter and the east half to which that description would specifically apply in section 28. And so by rejecting the words ''section 33'' as to these last described lands, and applying the evidence which shows that these lands constituted the home place of the testator, we find that they are correctly described, except that the section is omitted from their description, and there is sufficient description to identify these lands and they passed under the will of John McMahan to his wife, daughter Leah and adopted son. This conclusion fully accords with the presumption that the testator intended to devise all of his estate and not leave this

valuable tract of land wholly undisposed of, and because, moreover, it accords with his desire to provide an "ample support" for these devisees, whereas a different construction would render this expressed intention wholly inoperative.

II.    But is is insisted by the defendants that the seventh clause in the will created a condition precedent, and that no interest passed to or vested in the said William McMahan by clause three of the will, because it did not appear that he had complied with the conditions set out in clause seven, that he should "remain 'with his adopted mother until he is twenty-one years of age and behave toward her as a dutiful son." Now, as to this contention the court found as a matter of fact that William McMahan was over twenty-one years of age at the time of his marriage, and the evidence abundantly established that finding. The only way in which it was claimed that he violated this condition is that he married before he was of that age, but all the testimony shows that he was an exemplary young man, hard-worker, sober and industrious, with no bad habits. While there was some evidence tending to show that his foster mother objected to his marrying when he did, the evidence establishes that they were soon reconciled, and that he continued to live on the farm, although in another house, and cultivated the land and took care of the crops and her stock; that he was at her house every day, and furnished her her fuel and kept up the farm. The evidence tends clearly to show that the foster mother at least was entirely satisfied with his conduct towards her. We do not, under these circumstances, think it is necessary to go at any length into the learning on the subject as to whether this condition was a precedent or a subsequent one, for in either event, William McMahan fulfilled it.

III.   The answer set up that there was then pending a suit to contest the codicil to this will of John McMahan's.   The evidence tended to show that while such a suit had been filed no service had been had on the defendants in that case who are the plaintiffs in this case.   This plea was in the nature of a plea in abatement to the trial of this cause.   But the record of this case shows that when it was reached it was was tried without any objection or a request for continuance.   And during the trial of this case, the plaintiffs in that case obtained an order for an *alias* summons on these plaintiffs and only raised the pendency of that suit as a defense to the merits of this case. The point now made is that it was error for the circuit court in this case to attempt to adjudicate the title while the contest of the codicil to the will was pending. We think the court committed no error in refusing to abate this suit until the trial of the alleged contest over the codicil.   No service had been had on the defendants in that case who are the plaintiffs in this case, and they were not in court.   Moreover, the defendants went to trial without objection in this case. It was perfectly competent for the circuit court in this case to find as it did find that the original will and codicil had both been probated by the probate court of Newton county in 1888.   The original will and the codicil thereto were written upon the same sheet of paper and has attached thereto the certificate of the probate judge of Newton county, certifying that the judge of Newton County Probate Court had examined the said instrument and had heard the evidence of the subscribing witnesses and adjudged the same to be the last will and testament of John McMahan.   The court very properly, we think, ruled that the probate court probated both the will and the codicil, as they were both written upon one piece of paper and were presented to the probate court at one and the same time for probate.   If the court rejected the codicil, it was

its duty to grant a certificate of rejection, but, taken together, we think the probate court granted a certificate of probate of the whole will including the codicil.

We have carefully gone through various other objections as to the admissibility of testimony and the rejection of the same, but in our opinion there was no error in this respect, but if any at all, of a technical nature, which was not such as would call for a reversal of the judgment. The judgment of the circuit court is therefore affirmed.

*Burgess* and *Fox, JJ.*, concur.