GEORGE C. EBERLIN ET AL., RESPONDENTS, v. AMANDA BRUNNER ET AL., APPELLANTS.—123 S. W. (2d) 543.

Kansas City Court of Appeals. January 9, 1939.

*L. G. Graf, Jesse H. Schaper* and *Randolph H. Schaper* for respondents.

*Joseph T. Tate, James Booth* and *James L. Anding* for appellants.

KEMP, J.—This is a suit in equity for the construction of the will of Christ Eberlin, who died on April 7, 1936. His will was executed on September 17, 1934, and was admitted to probate in the probate court of Gasconade county on May 28, 1936. George C. Eberlin, Armin Eberlin and Mrs. Amanda Brunner were named in the will as executors and executrix, respectively. Amanda Brunner duly qualified as executrix but George C. Eberlin and Armin Eberlin refused to qualify as executors.

This action was commenced in the circuit court of Gasconade county, Missouri, by George C. Eberlin, Armin Eberlin and Delvine Kloppenburg against Amanda Brunner, Eugene Brunner and Amanda Brunner, executrix of the estate of Christ Eberlin, deceased. The plaintiffs, George C. Eberlin and Armin Eberlin are sons, and Delvine Kloppenburg (daughter of Armin Eberlin) is a granddaughter of the testator. Defendant Amanda Brunner is the daughter, and defendant Eugene Brunner (son of Amanda Brunner) is the grandson of the testator.

From a judgment in favor of plaintiffs sustaining their contention as to the construction of said will, defendants have prosecuted this appeal. Omitting the formal portions thereof, the will is as follows, to-wit:

"First, I direct the payment of all my just debts and funeral expenses.

"Second, I give, devise and bequeath unto my son, Geo. C. Eberlin, my building No. 12 on Fourth Street in Hermann, Missouri,

together with the certificate which I have in my possession, upon condition that the said Geo. C. Eberlin pay the sum of six thousand dollars ($6,000) said sum to be divided as follows: One thousand dollars ($1,000) to my son Armin Eberlin, five hundred dollars ($500) to my granddaughter Delvine Kloppenburg, five hundred dollars ($500) to my daughter Mrs. Amanda Brunner, nee Eberlin only, two thousand dollars ($2,000) I hereby set aside for my doctor bills, nursing and funeral expenses, all the remainder of the aforesaid ($6,000) shall be applied and paid upon the Mortgage now on my Fourth and Market Street property in Hermann, Missouri.

"I give and bequeath unto my son Geo. C. Eberlin all my property left in the basement of the first above described building at the time of my demise.

"Third, I give, devise and bequeath unto Eugene Brunner, my grandson, my large iron safe and my building and lot located at the corner of Fourth and Market street in Hermann, Missouri, upon condition that the said Eugene Brunner pay the unpaid balance on the Mortgage now on said property with the interest and taxes which may be due. The said Eugene Brunner shall also care for my cemetery lot, in the Hermann City Cemetery for a period of twenty-five years, if he lives so long. He shall keep the said lot clean and in good repair and plant six Geranium plants on every grave on said lot.

"Fourth, I give and bequeath unto my daughter, Mrs. Amanda Brunner, as her absolute property all my household and kitchen furniture, all my notes and bonds of which I die seized for which the said Mrs. Amanda Brunner shall care for me during any illness that may befall me.

"Fifth, It is my desire that my sons, Geo. C. Eberlin and Armin Eberlin each select a piece of furniture and keep the same as a remembrance of their mother.

"Sixth, I do nominate and appoint my three and only children Geo. C. Eberlin, Armin Eberlin and Mrs. Amanda Brunner as Executors and Executrix of my last will and testament to serve as such without bond."

The assets of the estate of Christ Eberlin consisted of certain household goods and kitchen furniture, two pieces of real estate (in respect to which there is no dispute), a certificate for one share of bank stock in the Farmers and Merchants Bank of Hermann, Missouri, and two promissory notes—one the note of George C. Eberlin payable to the order of testator in the principal sum of $5,000, and the other a note of Oscar Eberlin and Flora Eberlin payable to the order of testator in the principal sum of $50—and an iron safe.

Plaintiffs in their petition allege that "said will of Christ Eberlin,

deceased, is vague, uncertain and indefinite, and that a latent ambiguity is manifest in the said will, which will require the aid of outside evidence to remove; that there are conflicting claims between plaintiffs and defendants set up to the same property under the provisions of said will, and that the rights of plaintiffs under and by force of the provisions of the second, fourth and fifth clauses of said will are the subject of controversy between plaintiffs and defendants.''

It is then alleged that the will should be construed as bequeathing and devising to George C. Eberlin not only the real estate referred to in clause two of the will but also the above mentioned note for $5,000, the specific contention being that the word ''certificate'' in clause two refers to said $5,000 note.

To said petition defendants filed a joint answer, alleging in substance that the words in the second clause of the will, namely, ''together with the certificate which I have in my possession'' are not vague, indefinite or uncertain, but are definite and certain and refer to a certificate of bank stock owned by the deceased at the time of his death, and alleging that the will should be construed as giving to Amanda Brunner all of the testator's household and kitchen furniture and all of the notes and bonds as stated in the will, and as giving to George C. Eberlin the certificate of bank stock owned by the deceased at the time of his death (there being no dispute as to the right of said George C. Eberlin to take the real estate described in the second clause of the will, subject to the conditions therein set out.

Stating succinctly the issue presented here, plaintiffs claim that the language in clause two of the will, ''together with the certificate which I have in my possession,'' refers to the note of the said George C. Eberlin payable to the order of the testator in the principal sum of $5,000.

In the trial of the case plaintiffs, over the objections of the defendants, were permitted to introduce the testimony of various witnesses to the effect that they had heard the testator refer to notes as ''certificates,'' or, as he pronounced the word ''certifikats'' which he sometimes shortened to ''stifikats.''

William J. Ellis, Probate Judge of Gasconade county, testified that in years past he had drawn two or three wills for the testator and that he had mentioned that there was a ''certifikat'' for $5,000 in his estate, and that on another occasion testator had mentioned the fact that ''George Eberlin owed him a 'certifikat' of so much, $5,000.''

Mr. L. G. Graf, one of the attorneys for plaintiffs, testified that he had known the testator for thirty years and had acted as his attorney; that he had heard him refer to a note of a Mr. Karl to

the testator as a "certifikat," and that very frequently in discussing notes, the testator referred to a note as a "certifikat" or "stifikat;" that in a conversation with the testator about needing cash, the testator had said "I have got a 'stifikat' against him (George) for $5,000 and something." This was the only time the witness ever heard the testator refer to this particular note of George Eberlin's, but the witness testified that "often about notes he (the testator) referred to them as 'stifikats.' "

Mr. A. C. Mueller testified that he was a lawyer and that he drew the will involved in this litigation on September 17, 1934; that when he asked what the testator meant by the word "certificate" mentioned in the second clause of said will, the testator replied "a certificate in his possession and they all knew what it was." The testator didn't show the said scrivener any certificate or any notes. The scrivener testified that in his opinion the testator knew what he wanted to do with his property and how he wanted to dispose of his notes, and it was put down in the will just as the testator directed.

"Q. Mr. Eberlin told you just what he wanted you to write into his will, didn't he? A. Yes, sir.

"Q. And you wrote into that will just what he told you? A. Yes, sir.

"Q. And just the way he told you? A. That is right.

"Q. And you didn't write anything else, did you? A. No, sir."

George C. Eberlin, one of the plaintiffs herein, and a son of the testator, testified that he had been associated with his father in the hardware business since 1887 as a partnership business; that the partnership had owned some notes and that the testator referred to them "sometimes as notes; most of the time as 'certifikats.' "

Armin Eberlin, another plaintiff, and a son of the testator, was asked:

"Q. Now, what was the thing generally spoken about notes, what did he call them? A. Sometimes he would call them notes, and sometimes he would call them 'certifikats.' "

On behalf of the defedants, Mrs. Amanda Brunner testified that she had heard her father speak of notes and heard him particularly mention the note of his son, George C. Eberlin, which he held, and that "many times he would mention that he would like for George to pay some on that note if he possibly could"; that the testator never referred to a note as a certificate in talking to her. She also testified that she remembered when he purchased the stock certificate in the Farmers and Merchants Bank—that he purchased this from the heirs of his brother, Gustave Eberlin—and that at the time he purchased it he referred to it as a certificate.

While we believe it unimportant to a decision in this case, there was, nevertheless, testimony as to the value of the lot and improvements thereon devised to George C. Eberlin under clause two of the will. The various witnesses placed valuations on said real estate all the way from $5,500 to $8,500. In the inventory it is appraised at $7,000.

It is not the function of a court to make or rewrite a will for the testator under the guise of construing it. In such matters it is the function of the court to examine the will from its four corners and to ascertain therefrom the true intent and meaning of the testator, but never to substitute for the actual provisions of a will the court's notion of what the will should contain. [Bond v. Riley, 317 Mo. 594, 296 S. W. 401, l. c. 404.] So long as the purpose be legal and the terms of the will be clear and unequivocal, a person of testamentary capacity may dispose of his property in any manner he desires. The mere fact that the provisions of a will may appear to a court to be whimsical, capricious or unjust does not give to a court the right to rewrite or in any way modify the terms of a will.

In construing a will the sole duty of a court is to determine the true intention of the testator. Section 567, Revised Statutes Missouri, 1929, expressly requires that all courts "shall have due regard to the directions of the will and the true intent and meaning of the testator in all matters brought before them."

In harmony with this statutory command, the Supreme Court of Missouri, in the case of *Blumer v. Gillespie*, 93 S. W. (2d) 939, l. c. 940, lays down this general rule:

"It is hardly necessary to mention, and absolutely unnecessary to cite authorities to the effect that in construing a will the single aim and object is to arrive at the intent of the testator. In the search for that intention, the will should be viewed from its four corners, and all of its terms and provisions should be given a fair and reasonable interpretation. The first and last inquiry should be, What was the intention of the testator?"

It is only in case an ambiguity remains, after examining the will from its four corners, that extrinsic evidence may be considered to remove the doubt as to the intention of the testator. Thus, in *Burrier v. Jones*, 92 S. W. (2d) 885, l. c. 887, the Supreme Court of Missouri declares the duty and function of a court, in the construction of a will, in the following language.

"The function of a court it to construe a will and not to make or rewrite one for the testator under the guise of construction. [69 C. J. 42; Scott v. Fulkerson, 332 Mo. 734, 60 S. W. (2d) 34; Grenzebach v. Franke, 315 Mo. 392, 286 S. W. 79.] If a will expresses the intention of the testator in clear and unequivocal language, there can be no occasion for construction; but, if, when read from the four

corners, there is doubt as to what the testator intended, then resort may be made to the rules of construction to aid in determining the intention of the testator."

To the same effect is the rule of construction laid down in the case of *McGregory v. Gaskill*, 296 S. W. 833, 1. c. 834.

Examining the terms of the will in controversy, in the light of these rules of construction, we are convinced that, so far as the disposition of the George C. Eberlin note is concerned, there is no ambiguity requiring the aid of extrinsic evidence. The testator, in clause two of his will, among other things, bequeathed to his son, George C. Eberlin, "the certificate which I have in my possession," and it is contended by plaintiffs that the testator thereby referred to the $5000.00 note. At the time he made his will he had property which the term "certificate" accurately described. He bequeathed to his daughter *all of his "notes."* At the time he made his will, and at the time of his death, he had property which the term "notes" accurately described.

It seems to us, therefore, that the only possible effect of extrinsic evidence in this instance would be "to establish an intention different in essence from what the will expresses on its face."

Furthermore, we are unable to see how the evidence showing that the testator sometimes used the term "certificate" when he referred to a note, and sometimes used the word "note" to refer to the same character of property, could possibly permit the conclusion that when the testator used the term "certificate" in the will, he meant to describe a certain one of two notes which he owned. There is no evidence that he habitually referred to a note as a "certificate." As his son, Armin Eberlin, testified, "Sometimes he would call them (notes) 'notes' and sometimes he would call them 'certifikats.'" It is even more difficult to follow the reasoning that the term "certificate" referred to the $5000 note but did not, as found by the decree of the lower court, refer to the $50 note. We find absolutely nothing in the record to warrant such a conclusion. If the term "certificate" was the term by which the testator at times referred to notes, then if either of the notes were intended under the terms of the will for the son, George C. Eberlin, it would of necessity follow that both notes owned by the testator at the time of his death were intended by him to be bequeathed to his son, George C. Eberlin. But no such contention is made. In fact, the trial court found that one of the two notes included in the estate was intended to go to his daughter, Amanda Brunner—and this in spite of the fact that there is no evidence in the record to the effect that the testator had ever expressed an intention to give the $5000 note, as distinguished from the $50 note or otherwise, to his son George. The reasoning by which such a result is reached is most obscure.

In this connection, we call attention to the well-settled presump-

tion that a testator intends by his will to dispose of his entire estate. It was said in *McMahan v. Hubbard*, 118 S. W. 481, 217 Mo. 624, l. c. 637:

"Among the cardinal rules often invoked by this court in the construction of wills is the presumption that the testator intended to dispose of his whole estate. This presumption seems to amount to this, that where there is a general intention appearing in the will to thereby make a complete disposition of all of the testator's property, such general intent is allowed weight in determining what was intended by a particular devise that may admit of enlargement or limitation."

In the second clause of the will the testator devises and bequeaths "unto my son, George C. Eberlin, my building No. 12 on Fourth Street in Hermann, Missouri, *together with the certificate which I have in my possession.*" An examination of the inventory of the estate discloses that the testator owned a certificate of bank stock. He had for a number of years collected dividends on this certificate of bank stock. It is contended by the plaintiffs that he knew this bank stock was worthless at the time he made his will. The evidence discloses that dividends had been passed for the year or two preceding the date the will was made, and that in December, 1934, the bank closed. From this evidence alone, however, it cannot reasonably be said that the testator knew this bank stock was valueless at the time he made his will. There is evidence that he referred to bank stock as a "certificate" and, under the rule laid down above, it would seem clear that the intention of the testator was to give this particular piece of property, regardless of its worth, to his son, George C. Eberlin. To give effect to the word "certificate," under the facts above set out, we must conclude that the testator intended to describe the share of bank stock. Any other construction would mean that he died intestate as to this particular piece of property.

From the foregoing, we are led to the following conclusions; that by the term "certificate," appearing in clause two of his will, the testator referred to the certificate of bank stock which was then, and at the time of his death, in his possession, and that he did not intend, by the use of the term "certificate" to refer to the $5000 note of George C. Eberlin, or to any other note; and that by the phrase "all my notes," as it appears in the fourth clause of the will, the testator intended to refer to the only two notes that he then owned, including the $5000 note of his son, George C. Eberlin, and that it was the intention of the testator, under the provisions of the fourth clause of his will, to bequeath said notes, including the $5000 note of George C. Eberlin, to his daughter, Amanda Brunner.

Plaintiffs, to support their contention, seek to invoke the rule of construction as stated in 28 R. C. L., at page 282, which is as follows:

"A testator may have habitually called certain persons or things by peculiar names, by which they were not commonly known. If these names should occur in his will, they can only be explained and construed by the aid of evidence to show the sense in which he used them, in like manner as if his will were written in cipher or in a foreign language. As an aid in the construction of a will therefore parol evidence is admissible to show the sense in which the testator habitually used certain words. For example such evidence may be admitted to explain the sense in which the testator used the word "lot," namely that it was used by him usually to designate a large parcel of ground and not as intended to refer to an ordinary town lot. And where a testator devised land to "the four boys," parol evidence that he had seven sons, three of whom were adults living in their own homes, and the other four were minors living with him, was held admissible to show that the devise was intended for the minors. . . ."

It is undoubtedly well settled that where the true intent of the testator cannot be determined from the instrument itself, extrinsic evidence is admissible in construing a will to show that a certain word appearing in the will is habitually or customarily used by the testator in some unusual or peculiar sense. But this rule is clearly not in point upon the facts here. To illustrate the distinction between this case and one wherein the rule would apply, let us suppose the testator, in the instant case, bequeathed to his son all of his certificates. Suppose, further, that the testator had some notes in his estate, but that the word "notes" did not appear in his will, and that there was a contention that as to his *notes* he died intestate. Under such facts, the above rule would be applicable and extrinsic evidence to the effect that the testator customarily referred to "notes" as "certificates" would be admissible in determining the true intent of the testator. But in the instant case no such situation exists. Here the testator used both the word "certificate" and the phrase "all my notes," and at the time he made his will he then owned property of each description.

Plaintiffs in their brief also cite the following cases: Riggs v. Myers, 20 Mo. 239; Willard v. Darrah, 168 Mo. 660; Snorgrass v. Thomas, 166 Mo. App., l. c. 609.

We have examined each of these decisions and find that none is in point on the precise question which is here presented. The facts in each present an entirely different situation from the case under review. We find nothing in any one of these decisions which conflicts with anything we have said or with any conclusion we have reached in this opinion.

With the exception of the ruling with reference to the disposition under the will of the $5000 note executed by George C. Eberlin, and the certificate of bank stock, we find no error in the de-

cree of the trial court. The judgment, therefore, should be and is hereby reversed and the cause remanded with directions to the trial court to set aside the decree heretofore entered herein and to redraft and enter a decree in conformity with the views herein expressed. All concur.