————o————

RUSH C. OWEN, Respondent, *vs.* JOHN P. ELLIS, *et al.*, Appellants.

1. *Evidence—Conveyances—Proof of intention in making.*—Parol declarations as to intentions and purposes in making a deed are inadmissible.
2. *Wills and deeds—Interest and power—Construction, question of intent.*—In the construction of both wills and deeds where there is an interest and also a power, the decisive question is as to the intent of the grantor or testator.
3. *Will—Deed under will execute power, when.*—Where one having under a will an interest in land, coupled with a power, makes a deed for a valuable consideration, and as a conveyance of the donee's interest, the instrument cannot have the effect intended, it will be considered as an execution of the power, although no reference is made to the power.
4. *Will—Deed under by widow—When construed as execution of power—Payment of debts—Implied power of sale for—Signature of executrix.*—By the terms of a will, a life estate in testator's lands was vested in the widow "my just debts first to be paid," and "the property never to go out of the family in any other way than to pay debts, or for the ordinary expenses of the family." At an advanced age, and for value, she conveyed a certain portion of the lands (which were unimproved and wild) by a fee simple warranty deed, in the usual form, but signing herself as executrix: *Held,*

1st. Her signature as executrix was merely a *descriptio personæ.*
2nd. *Semble,* that in view of the provisions of our statute touching administration, and in the absence of more specific provisions in the will relating to sale of lands for payment of debts, the clause "my just debts first-to be paid" would not be construed as conferring an implied power for that purpose.

3rd. Her intention was manifestly to convey an absolute title, and it was very doubtful whether any reference to the power was necessary, but at all events very slight circumstances would justify an application of the deed to the power, and not to the life estate, and the grantee under her deed would then take a fee simple title.

*Appeal from Green Circuit Court.*

*John P. Ellis*, for Appellants.

I. In Owen vs. Switzer, (51 Mo. 322) the deed purported to be the individual act of Louisa T. Campbell, and the court held it was her individual deed and conveyed her individual estate.

Here the deed purports to be the act of the executrix of the estate of John P. Campbell—and hence it should have effect as the deed of an executrix, and should convey such estate as the executrix could, under the will, convey. Now as executrix, Mrs. Campbell could not convey her own life estate. She, in that capacity, could only convey the fee ; so that in order to give any meaning or effect to the conveyance as the act of an executrix, it must have vested the fee simple to the lands in controversy in John Lair, and constitute a bar to plaintiff's action.

A reference either to the will or to the powers therein contained, is sufficient to give effect to the deed as an execution of the powers in the will. (Pease vs. Pilot Knob Co., 49 Mo. 124 ; Littleton vs. Addington, 59 Mo. 275 ; Turner vs. Timberlake, 53 Mo. 378 ; citing Blagge vs. Miles, 1 Sto. 427 ; Jay vs. Stein, 49 Ala. 514–524 ; Clark vs. Haranthall, 47 Miss. 434 ; Drusadow vs. Wilde, 63 Pa. [St.] 170 ; Raine vs. Beckett, 30 Ind. 154–163.) The language " executrix of the estate of John P. Campbell, deceased," is *ex vi termini* a reference to the will.

The words " my just debts to be paid first," are an implied charge on the real estate of the testator, which in the failure of the personal property to satisfy the debts, raise a power in the executrix to sell the lands to pay the debts. (2 Sto. Eq. Jur. § 1246 ; Clark vs. Hosenthall, 47 Miss. 434 ; 2 Jarm. Wills, 512, *et seq.;* Foster vs. Craig, 2 Dev. & Bat. 209 ; 1 Sto. Eq. 428 *et seq.* )

*McAfee & Phelps*. for Respondent.

I. Unless the deed refers to the power in apt and certain words it will not be taken as in execution of it, but will be construed as passing Mrs. C.'s own interest, if she had any interest for the deed to operate upon. (Pease vs. Pilot Knob Iron Co., 49 Mo. 124 ; Owen vs. Switzer, 51 Mo. 322 ; Turner vs. Timberlake, 53 Mo. 371.)

The intention to execute the power must be apparent and clear so that the transaction is not susceptible of any other interpretation. If it be doubtful under the circumstances, then that doubt will prevent it from being deemed an execution of the power. (Blagge vs. Miles, 1 Sto. 427 and authorities there cited.)

In Owen vs. Switzer, this same will was in controversy. But in that case it was held that the deed to Holland was not an execution of the power. The only difference in the deed in that case and the deed in this case is this : In this case, in the deed, Mrs. C. describes herself in this way : " I, Louisa T. Campbell, Executrix of the estate of John P. Campbell, dec'd, do," etc., and she signs it " Louisa T. Campbell, Executrix," while in the deed to Holland in Owen vs. Switzer, these descriptive words are left out, and this is really all the difference in the two cases.

But her power to sell was not at all dependent upon her fiduciary capacity. Without the last clause in the will, appointing her executrix, she would have the same power to sell—she would have had the power to sell without ever qualifying as executrix. (Owen vs. Switzer, *supra*, 328 ; Hazel vs. Hagan, 47 Mo. 377.)

Her designation as executrix was mere *descriptio personæ*. (Lecompt vs. Seargant, 7 Mo. 351 ; Fream & Snowden vs. Camden, 7 Mo. 298.)

There are no imperfections in the deed of Mrs. Campbell to Lair. It is either an execution of the power, or it is a conveyance of her own estate, and whether it be the one or the other must be determined by Mrs. Campbell's intentions, and her intentions must appear from the language of the deed. (1 Sto. 437 ; 53 Mo. 378 ; 51 Mo. 332 ; 49 Mo. 124 ; 2 Sto. Eq. Jur., § 1062 and note 1, and authorities there cited. )

Now is it not reasonable to suppose that she would not have made a warranty deed if she wished merely to execute a power ?

It is neither proper nor customary for persons executing powers to warrant the title. Hence, the fact of this being a warranty deed is no evidence of an intention to execute the power. The deed in Owen vs. Switzer and Pease vs. Pilot Knob Iron Co. were both warranty deeds.

NAPTON, Judge, delivered the opinion of the court.

In this action of ejectment the facts vary but little from those in the case of Owen vs. Switzer, (51 Mo. 322) for which reference is made to the printed report of that case. The deed in this case from Mrs. Campbell to Lair, under whom defendants hold, differs from the deed in the case referred to in Mrs. Campbell describing herself both in the beginning and signature of the deed as "executrix of the estate of John P. Campbell, deceased." It is signed by "Louisa T. Campbell, executrix." It was in the ordinary form of a conveyance in fee simple, and purported in consideration of $1,200 dollars, the receipt of which is acknowledged, to convey one hundred and twenty acres of land. The statutory words "grant, bargain, and sell" are used, and the deed purports to convey to Lair and his heirs and assigns, in fee simple forever, to their own proper use and behoof," and contains an express covenant of seizin of an indefeasible estate in fee simple, and a covenant against incumbrances and of general warranty.

The will of Jno. P. Campbell is set out at length in the report of the case referred to, and need not be repeated here. John P. Campbell died in 1851 and the deed of Mrs. Campbell was made on the 16th September, 1854.

Evidence was offered at the trial of conversations had with Mrs. Campbell, a month or so after she had conveyed to Lair, in regard to her intentions in that sale, and her understanding of the effect of that deed. This evidence was excluded. It was proved that the land was worth about ten dollars an acre in 1854. Mrs. Campbell's death occurred before the commencement of the action. The court expressed the opinion that the deed contained

no reference to the power given Mrs. Campbell in the will, and as she had a life estate, upon which the deed could operate, the deed only carried the life estate, and therefore the plaintiffs who were heirs of John P. Campbell were entitled to recover, and the judgment accordingly was for the plaintiffs.

In examining the questions presented by this case we may dismiss from further consideration, all the parol evidence offered on the trial of Mrs. Campbell's declarations in regard to her purposes and intention in making the deed. The inadmissibility of such testimony is so well established, that a citation of authorities is deemed unnecessary.

It seems to be established by all the authorities, both English and American, that in the construction of both wills and deeds, where there is both an interest and a power, the decisive question is as to the intent of the grantor or testator. Chancellor Kent says: "In construing the instrument in cases where the party has a power and also an interest, the intention is the great object of inquiry, and the instrument is construed to be either an appointment or a release; that is, either as an appointment of a use in execution of a power or a conveyance of the interest, as will best effect the predominant intention of the party." (4 Kent. Comm. 336.)

If we were at liberty to discard certain arbitrary rules, which have been established by the courts in England, and followed to a great extent in this country, to ascertain the intention of the donee of a power, and simply inquire, without reference to any rules on the subject, what was Mrs. Campbell's intention in making this deed, but one answer, we imagine, could be made. We might safely say, as Lord Wynford said in the House of Lords, when the Roake's cases were before it (1 Dow. & Clark, 451) that nine hundred and ninety-nine persons out of a thousand would say on reading the deed, that the grantor did intend to convey a fee simple. We might go further and say that the remaining one of the thousand would come to the same conclusion. And it might be further observed that Lord Wynford's suggestion, that the rules were bad rules, was recognized by the British

Parliament, and some of them were abolished by 1 Vict. ch. 26, § 27, in which it was enacted that a general devise of real and personal property should operate as an execution of a power of the testator over the same, unless a contrary intention appeared in the will.   (4 Kent, note, p. 333.)

The intention of Mrs. Campbell to convey a fee simple is declared on the face of the deed, and is manifested by the most solemn assurances known to the law.   But Lord Tenterden said in the Roake's case, that "it is the better course to abide by general rules and principles, and not to be led aside by subtle distinctions and considerations of hardships in particular cases ; otherwise one inconsistency will occur after another and the end will be inextricable confusion."

Recognizing the propriety of this remark, and not being aware of any legislation on the subject here, we proceed to inquire what these rules are, to what classes of cases they have been applied, and to what extent, if any, they apply to the case under consideration.

In Blagge vs. Miles, (1 Sto. 427) the rules applicable to the construction of instruments by the donee of a power are stated to be these :  1. There must be some reference to the power, or 2nd, a reference to the property which is the subject on which it is to be executed ; or 3rd. The case must be one where the provisions in the will or other instrument executed by the donee of the power would otherwise be ineffectual, or a mere nullity ; in other words, would have no operation except as an execution of the power.

The second of these rules would seem to apply mainly to wills, when there has been a specific devise of lands or a specific bequest of personal property which would only be good by reason of a power given to the testator to devise or bequeath, in which case, the naming of the subject matter of the power is equivalent to a reference to the power itself, and where thus limited, it resolves itself into the third rule.   And in regard to deeds or other instruments *inter vivos*, the property, which is the subject of the power, is necessarily referred to, and whether the deed will carry the whole estate under the power, or the limited estate which the

donee may have, is left to be determined by other rules. So that the third rule stated by Judge Story seems to be a mere reiteration of the second.

The modern English cases appear to rest on a decision of Lord Thurlow, who said that "to execute the power it must be impossible to impute to the testator any other intention than that of executing it."

In the case of Doe vs. Roake, first decided by Lord C. J. Best in the common pleas (2 Bing. 497) upon a review of all the authorities, and subsequently by the King's Bench (5 Barn. & Cress. 730), and finally by the House of Lords (1 Dow & Clark. 451), it was established that an express declaration of an intent to execute a power was unnecessary.

The judges, however, seem to have held that, even if the testatrix meant to give the lands in controversy, it did not necessarily follow that she meant to execute a power which she had to give them. This position is controverted by Sir Edward Sugden, whose opinion may be regarded as very high authority, since his work on Powers was sanctioned by him after he attained a position on the bench under the title of Lord St. Leonards. His remarks are : "The principle attempted to be established viz : that there must not only be an intention to dispose of the property, but also to dispose of it under the power, was strongly observed upon in argument at the bar of the House of Lords, and the author who had to sustain the decision, felt himself unable to support the doctrine advanced in the judgment. If the intention to pass the property can be collected, it will pass under the power, although the donee supposed it would work by force of his interest. There is no conflict ; he intends the property to pass, and thinks he has all the interest in it, whereas he really has only a power. The intention governs and the power will support the disposition."

Mr. Clance, whose treatise on Powers was subsequent to that of Sir Edward Sugden, seems to concur with Sir Edward Sugden on this point. Referring to Sir Edward Clere's case, which is leading authority upon which all the English courts base their opinions, he observes: "There are indeed in the case *dicta* apparently to this effect, that if the instrument refer not to the

power and can have some effect by means of the interest of the party, though not all the effect which the words seem to import, still the instrument shall not operate as an execution of the power, the intention being thus contravened. It appears quite, clear, however, at this day, and a reference to the authorities will, it is apprehended, show that it has been considered clear for nearly two centuries, that the rule is not thus confined; indeed it may well be asked why, admitting that the intention can be discovered to pass all, the intention should not prevail in the one case, as well as in the other ; what rule of law or construction would be thereby violated? The above position was not necessary to the decision of the case, and upon looking more closely into the point, the difficulty in the case put in Sir E. Clere's might be in clearly ascertaining the intention.''

The doctrine in Clere's case (6 Coke Rep.) though in the main followed in England, and made the basis of subsequent decisions, was, however, modified, or rather extended, by Lord C. J. Parker, in Tomlinson vs. Dighton (10 Mod. 36). In that case the C. J. says : "Suppose a woman seized of an estate for life, with a power to make a lease for three lives, or twenty-one years ; she marries, and then she and her husband join in making the lease, and the husband and wife both die before the lease is expired ; here, though the husband in right of his wife, and she in her own, are possessed of an estate for life, and therefore can, as owners, make a lease, and there appears no intention of the parties (imagining perhaps that they should have outlived the lease) that this lease should be made by virtue of the power, yet because the lease, supposing it made by them as owners, cannot have all the effect the parties intended, for some it would have (it would be a good lease during the lives of husband and wife), yet because it cannot have all, it shall be esteemed made by virtue of the power.''

Upon this case Sir Edward Sugden remarks : "Notwithstanding Sir Edward Clere's case, an intent apparent upon the face of the instrument to dispose of all the estate would be deemed a sufficient reference to the power to make the instrument operate as an execution of it, inasmuch as the words of the instrument cannot be otherwise satisfied.''

In the case of Blake vs. Marnell (2 Ball & Beat. 35) the question was not very unlike the one put by C. J. Parker, in Tomlinson vs. Dighton. Blake, who had a life estate in certain lands, was empowered to borrow £1,500 on the credit of the lands. Having contracted a debt to the amount of £744, he executed by deed to his creditor a rent charge of £150 per annum, until the debt was paid. Blake died the year after the rent charge was made, and the question was, whether the deed was an execution of the power, or was derived from the life estate, and consequently terminated at Blake's death. Lord Redesdale, before whom the case first came on demurrer, observed that, "all cases of voluntary executions of powers are entirely beside the present case, for when a person voluntarily executes an instrument which may have an effect under a power to charge property, he must demonstrate that he meant to execute that power; but when a person acts for valuable consideration, he is understood in equity to engage with the person with whom he is dealing to make the instrument as effectual as he has power to make it; and whenever that is the case, I do not see anything in any of the authorities to raise a doubt that it shall have that effect, so far as the person executing it has power to give it effect, and whenever the nature of the instrument is contrary to what the power prescribes, but demonstrates an intent to charge, it shall have the operation of charging in that form which the power allows."

Lord Chief Justice Manners, who finally determined the case, after intimating some doubt as to the rule in Sir Ed. Clere's case, and conceding that Lord Ch. Justice Parker's opinion in Tomlinson vs. Dighton, threw some doubt upon it, declares that "to the cases of creditors and purchasers the doctrine laid down in Sir Ed. Clere's case would not apply." Lord Manners observes further: "Where a tenant for life with power of leasing, grants a lease for an absolute term, then, although he may eventually have an interest co-extensive with the lease, yet the courts have invariably referred it to the power, in order to give complete validity to it, as in Campbell vs. Leach (Ambl. 740), King vs. Melling, (1 Veutr. 255) and many other cases that might be referred to. So here the deed provides that the grantee shall have

so much of the rents until the debts and costs are satisfied ; this might have been effected in the life of Blake ; nevertheless it shall, to give validity to the grant, be referred to the power, and is a good charge by virtue of such power."

The case of Wade vs. Pagil (1 Bro. Chy. 364) is declared by Sir Edward Sugden to be a remarkable case, and according to his version of it, the inclination of the courts in England to give effect to a settlement in consideration of marriage (which is a valuable consideration) is clearly manifested.   In that case the power given in the first settlement was not referred to ; but the settlor recited that he was seized in fee and conveyed as owner, and yet the power was held to be well executed, because the intention was plain to transfer the fee.   Yet it was clear that the settlor did not intend to transfer under the power, because he recited his own seizure of a fee.   The result was, as Sir Edward Sugden states, that if the estate be conveyed and the settlor's interest will not support the settlement, it will be deemed an execution of the power, although the settlor mistook his title and recited that he was seized in fee of the estate and conveyed it as owner.   (1 Sugd. 419.)

The result of these cases, under the singularly subtle and artificial mechanism of the English settlement law, is, that if a person has both a power and an interest, and he creates an estate which will not have an effectual continuance in point of time if it be fed out of his interest, it shall take effect by force of the power, whether referred to or not.   (1 Sugd. 418.)

If the remarks of Lord Redesdale, and subsequently of Lord Manners in Blake vs. Marnell, are to be understood literally, it is difficult to withdraw the present case from the operation of the rule therein established, as it is clear that the defendants were purchasers for value.   But Mr. Clance remarks, in regard to the reasoning and decision in Blake vs. Marnell, that some expressions occur in that case intimating that a difference might arise according as the parties claiming should be volunteers or not, and he supposes that these remarks were made on the idea that the execution of the power was a defective one, and consequently courts of equity would always interfere in cases of defective exe-

cution where purchasers were concerned, but not in favor of volunteers. (2 Clance, 1622.) Nothing of this kind, however, appears in the report of the case.

But we may be excused from following these cases under the English settlement laws to what we might think their legitimate conclusion, and decline to apply the judgment of Lord Redesdale and Lord Manners, and Lord Ch. Justice Parker and Lord St. Leonards, to the facts of the present case, in view of our previous decision in Owen vs. Switzer, and it will not be necessary for us to assume a comprehension of the intricacies and subtleties of English settlements, concerning which Chancellor Kent's observations are forcible and striking. "The doctrine of uses, trusts and powers," observes Chancellor Kent, "is the foundation of those voluminous settlements to which we, in this country, are comparatively strangers, and which in practice run very much into details embarrassing by the variety and complexity of their provisions. Powers are the mainspring of this machinery. The doctrine of settlements has thus become in England an abstruse science which is in a great degree monopolized by a select body of conveyancers, who, by means of their technical and verbose provisions reaching to distinct contingencies, have rendered themselves almost inaccessible to the skill and curiosity of the profession at large. Some of the distinguished property lawyers have acknowledged that the law of entails in its present mitigated state, and great comparative simplicity, was even preferable to the executory limitations upon estates in fee. Settlements, with their shifting and springing uses, obeying at a remote period the original impulse, and varying their phases with the change of persons and circumstances and with the magic wand of powers, have proved to be very complicated contrivances; and sometimes, from the want of due skill in the artist, they have become potent engines of mischief planted in the heart of great landed estates. These domestic codes of legislation are usually applied to estates which necessarily require, under the English law of descents, very extended and complex arrangements, and which can well bear the weight of them. They seem to be indispensable in opulent communities to the convenient and safe distribution of large

masses of property, and to the discreet discharge of the various duties flowing from the domestic ties, and the evils are probably after all, greatly exaggerated by the zeal and philippics of the English political and legal reformers." •

Conceding, then, that there might be, and perhaps should be, some hesitation in treating the present case as falling within the principles of the cases cited, we pass on to the consideration of the principal point discussed at the bar in this case, in which it is supposed to be distinguishable from the case of Owen vs. Switzer.

Mrs. Campbell describes herself as "executrix of the estate of John P. Campbell, deceased," and signs her name to the deed as "Louisa T. Campbell, executrix." So far as the efficiency of the deed is concerned, these words are manifestly mere *descriptio personae*, mere surplusage, and the conveyance would operate as well without them as with them. She had no power to convey as executrix, for no such power was contained in the will.

The clause in the will which uses the terms, "my just debts first to be paid," would hardly be construed as an implied power given to the executrix to sell land for the payment of debts, since our statute sufficiently provides for such sales, and the testator had given his wife an express power to raise money by the sale of his lands to meet family exigencies, of which she was to judge. The decisions in England and in some of our States on such a clause would hardly apply, though doubtless here, as well as elsewhere, a testator may authorize his executor to sell lands for the payment of debts, and where such authority is expressly given in a will, it may supersede or be substituted for the specific modes provided. by our statute to insure the payment of debts either out of the personalty or real estate of the decedent.

The fact that Mrs. Campbell, as executrix, had no power to convey, leads to the inquiry why such designation was affixed to her name both in the beginning and end of the conveyance. It certainly implies that there was a will of which she was executrix, and that her conveyance was in some way authorized by such will. Whether she was donee of a power to raise money by a sale of land of her deceased husband, as his widow or executrix,

was doubtless a point upon which she was as ignorant as the lawyer to whom she entrusted the writing of the deed. She was expressly authorized to raise money for the support of herself and her children, by a sale of any of the lands belonging to her deceased husband. In all these lands the will gave her a life estate, which, in wild lands in the interior of Missouri, at the date of the will, might not have been of sufficient value to have attracted her attention. Her intention was obviously to convey an absolute title. A life estate of an old lady in unimproved lands would hardly have been salable unless under execution. The deed purports to convey an absolute title. It refers to the will which gave the grantor this power, though it does not refer to the power.

We think it very doubtful if any reference to the power was necessary in this case, as the manifest intention was to convey a fee simple; but, without so determining, we have no hesitation in declaring that very slight circumstances would justify an application of the deed to the power, and not to the estate (for life) which the grantor had. The reference to the will, though indirect, was sufficient.

The judgment is reversed.

———o———

| 64 | 89 |
| 102 | 92 |

| 64 | 89 |
| f152 | 519 |
| 152 | 520 |

| 64 | 89 |
| 167 | 243 |