GEORGIA LEHMANN AND LEWIS LEHMANN, MINORS, BY THEIR NEXT FRIEND, MRS. CHARLIE LEHMANN, RESPONDENTS, v. H. J. GRIFFIN, EXECUTOR, H. J. GRIFFIN, JOHN LEHMANN ET AL., APPELLANTS. —31 S. W. (2d) 271.

Springfield Court of Appeals.   September 25, 1930.

*Homer Rinehart* for appellants.

*Oscar V. Seed* for respondents.

BAILEY, J.—This is a suit involving the construction of certain clauses in a will. Plaintiffs are minors of tender years and their mother, Mrs. Charlie Lehmann, was appointed their next friend in bringing this cause of action. In their petition plaintiffs alleged that their grandfather, Julius Lehmann, departed this life, testate, and that his will was admitted to probate in September, 1928, in the probate court of Howell county; that defendant H. J. Griffin was named executor in the will and is now the duly qualified and acting executor of the estate; that said defendant was given an interest in the property of deceased, Julius Lehmann, under the will, but the nature and quality of said estate is couched in vague, uncertain and ambiguous language and said interest, if any, is adverse to these plaintiffs; that defendant, John Lehmann, or, if dead, his children, was interested as legatee in the sum of one dollar bequeathed to him. Then follows a prayer to construe the fourth, fifth and sixth paragraphs of the will. The answer of defendant executor presents the issues in the following language, viz., "Defendants further answering state that if any of the provisions of said will as mentioned in plaintiffs' petition is vague, uncertain or ambiguous, that it was the intention of said testator, Julius Lehmann deceased, by said will to give to the said H. J. Griffin full power and authority to have charge and control of all the property mentioned in said will for the benefit of the two grandchildren Georgie Lehmann and Lewis Lehmann, minors, until they become of age, and also to have authority to sell

any of said property mentioned in said will and invest the proceeds of said sales in such way and manner as said executor would deem best for said minors."

The material paragraphs of the will are as follows:

"Second: I have in mind my son John Lehmann and if he be living, I give, devise and bequeath him the sum of one dollar, and if the said John Lehmann be dead, leaving child or children I devise and bequeath to such issue the sum of one dollar.

"Third: I give, devise and bequeath to my two grandchildren. Georgie Lehmann and Lewis Lehmann, the children of my deceased son, Charlie Lehmann, all of the rest, residue and remainder of my property whether real, personal or mixed, and wherever situate, share and share alike.

"Fourth: I direct that my executor hereinafter named sell as soon as practicable after my death, any and all real estate that I may own at my death and upon such terms and at such price as to such executor shall be to the best interest of my said estate. And I further direct that my executor hereinafter named be not required to obtain any order of court for the sale of any and all real estate that I may own at my death and that he be given full power and authority to convey said real estate and to make proper deed or deeds for same without the intervention of any court.

"Fifth: I direct that my executor hereinafter named collect all my personal estate and sell all my real estate as provided in paragraph fourth above, and that said executor hold said estate intact until my youngest grandchild, Lewis Lehmann, above named becomes twenty-one years of age and then I direct my executor hereinafter named to divide my estate between the said Georgie Lehmann and Lewis Lehmann share and share alike.

"Sixth: I nominate and designate Attorney H. J. Griffin, of West Plains, Missouri, to be executor of this my last will and testament with full power to sell any and all real estate and at such price and on such terms as to him may seem best for the best interest of my estate, and with full power to my said executor to execute any deed or deeds in the conveyance of my said real estate without the intervention of any court."

Plaintiff's position is that the third clause in the will, as above set forth, created a fee-simple title in them to all the real estate of deceased and that such fee-simple title cannot be cut down by a subsequent clause in the will unless the language in the subsequent clause is as clear, concise and unequivocal as the language used in said third clause. On that theory, it is contended that the fourth, fifth and sixth clause of the will, couched in ambiguous, uncertain and vague language (according to plaintiff), are void and of no effect. On the other hand, defendant executor contends that even if the latter clauses of the will are ambiguous (which is denied), there was an

intention on the part of the testator to place the estate in charge of H. J. Griffen, with full power to control and sell same and invest the proceeds for the benefit of the two minor grandchildren until they become of age. The trial court, by its declarations of law given and refused, adopted plaintiff's theory of the case and rendered judgment for plaintiff, thereby holding plaintiffs were vested, under the will, with a fee-simple title to the lands and that no trust was created. Defendant has appealed.

In construing a will it is well to mention certain well-established principles of construction which must be our rule and guide in the decision of this case. The intent of the testator is always the guiding star and the courts are bound to have due regard to the directions of the will. [Sec. 555, R. S. 1919.] Every clause of the will should be given full effect. if possible, unless in conflict with some rule of law or against public policy. [Snow v. Ferril, 8 S. W. (2d) 1008; Sorenson v. Booram, 297 S. W. 70, 317 Mo. 516.] And the will should be considered *in toto* in attempting to arrive at the intent of the testator and the intent should be determined from the will itself when its provisions are free from ambiguity or uncertainty. [Pommer v. Bushnell, 292 S. W. 417, 316 Mo. 1016.]

The court should consider the will in the light of surrounding circumstances and as near as may be from the standpoint of the testator. [Grace v. Perry, 197 Mo. 550, 95 S. W. 875, 7 Ann. Cas. 948.]

With these rules in mind we shall consider the will of Julius Lehmann, deceased.

It is evident from this will that Julius Lehmann originally had two children, John Lehmann and Charlie Lehmann. At the time the will was drawn the son John Lehmann had evidently been gone and unheard of for some considerable time, since the testator did not know whether he was living or dead. There probably was some estrangement between the father and this son. But at any rate, the second clause of the will leaving to him or his children a nominal sum was a valid provision and is mentioned here only because it is part of his will. The other son, Charlie Lewis, was dead, and had left surviving him two children, Georgia and Lewis Lehmann, ages seven and five, respectively, when this suit was filed, and his widow Mrs. Charlie Lehmann. By the third clause of the will all the rest of testator's property is left to them in equal shares without qualification. This clause, standing alone, clearly vested these grandchildren with the fee-simple title to any land of which the testator died seized. [Sec. 551, R. S. 1919.] But by the fourth, fifth and sixth clause. the testator undertook to cut down the fee-simple title so devised in that he provided for a sale of the land and endeavored to deprive the minor grandchildren of control of their estate until they reached their majority. That such was the intent of the testator is too clear for

argument. It was the natural and reasonable thing for him to do. One of the grandchildren was about eight years of age, the other five. Certainly they were incapable and disqualified from managing their own affairs, and the testator, feeling a natural solicitude for their future welfare, undertook to select a person in whom he had confidence to administer their property affairs until they should become of age. There is testimony indicating he did not have confidence in the business ability of the mother and next friend of these grandchildren. He therefore named a man with experience as Probate Judge (which the record shows), and in whom he had confidence, to take charge of the property of plaintiffs. By the fourth clause he directed his executor to sell the property, "as soon as practicable after my death" and "upon such terms and at such price as to such executor shall be to the best interest of my said estate." He then provided that the executor should perform those duties "without any order of court for the sale," granting him "full power" to convey said real estate and "to make proper deed or deeds." This clause is clear and unambiguous. It tends to indicate more than a mere direction to sell but creates a personal trust, since the power of sale is coupled with a discretion. [Donaldson v. Allen, 182 Mo. 626, 81 S. W. 1151.]

This discretionary power is more fully set forth in the sixth clause, wherein the testator designates H. J. Griffin as executor with, "full power to sell any and all real estate and at such price and on such terms as to him may seem best." In so far, then, no uncertainty or ambiguity appears.

It is the fifth clause, however, which gives rise to uncertainty and doubt. The executor is there directed to "hold said estate intact until my youngest grandchild, Lewis Lehmann, above named, becomes twenty-one years of age and then I direct my executor hereinafter named to divide my estate, etc." To give to the word "intact" its ordinary meaning would be to declare the executor was to keep the fund derived from the sale of testator's property, "entire" or "untouched" or "uninjured" (Webster's New International Dictionary). The oral testimony admitted on the theory of explaining this ambiguity bears out the idea, in a measure, that the fund was to be permitted to remain in the executor's hands. But the will nowhere gives him a direction to loan the money or collect the income. Strictly speaking, according to the terms of the will, the fund should be held and not even loaned or invested. We might supply the additional words necessary to require the executor to invest the money in safe securities, which the testator certainly intended. But we cannot gather from the will whether the testator intended that the executor pay the income to plaintiffs or permit it to accumulate with the principal fund until the time of distribution. While omitted

words may be supplied, the court cannot write the terms of the will. [Bond v. Riley, 296 S. W. 401, 317 Mo. 594.]

The evidence does not show these plaintiffs had any property other than that left them by the will. The mother drew a small pension, it seems, but whether she had other income does not appear. We therefore cannot believe the testator intended to deprive plaintiffs of the income of this property for a period of some fifteen years, while they were young and more or less helpless. Whether he did or did not is left to conjecture. Thus the fifth clause becomes ambiguous and falls within the rule announced in the case of Sevier v. Woodson, 205 Mo. 202, wherein the Supreme Court said:

"We take it to be well settled law that where a certain estate is granted in plain and unequivocal language in one clause of a will, the same cannot be lessened or cut down by a subsequent clause of the will, unless the language used in such subsequent clause is as clear, plain and unequivocal as the language of the first grant."

We conclude that the plaintiffs were vested with the fee-simple title under the third clause in the will, which was not cut down by the ambiguous and uncertain terms of the subsequent fifth clause of the will.

Defendant contends that even though the fifth clause may be void, yet, since the executor, in the fourth and sixth clauses, expressly directed a sale of the property at the time of his death, all the estate was converted into personalty at that time and the executor received the estate as such. If these provisions were standing alone the contention of defendant would be tenable. A direction to sell at the time of testator's death would amount to a conversion into personalty if given effect. [In re McElvey Estate, 266 S. W. 123; Cannon v. Curtis, 175 Mo. App. 84, 157 S. W. 860.]

But we must consider the whole scheme of the testator. It is evident he wanted the real property sold in order that the same might be converted into money. He probably realized that real property required more care and judgment in its management than would money properly invested and, for the sake of his young grandchildren, he no doubt wanted his estate to be converted into money and then into interest bearing securities. But he certainly never intended there should be a sale merely for the purpose of administering on the estate. If the 15 year "trust period" failed, there is no reason to believe the testator intended a sale of his property at his death notwithstanding the invalidity of the intended trust. The two clauses, one directing a sale of his property and conversion of it into money, the other directing the executor to hold his estate "intact," are inseparably connected and the failure of the latter carries down with it the former. Moreover, having held that plaintiffs took the fee-simple title to the real estate under the will, it is inconsistent there-

with to cut down their estate by permitting the executor to sell the property under the ambiguous and uncertain character of clause five.

Other assignments are covered by what has been said. It is our opinion the judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Smith, J.,* concur.