Samuel L. SELTZER, Trustee, etc.,
Respondent,

v.

Catherine SCHROEDER et al., Appellants.

No. 24485.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1966.

Ronald Reed, Jr., Ronald Reed, Reed & Reed, St. Joseph, for appellants Leon T. Ashton and Mary Cowles Moore.

James Turner, Edward P. Speiser, Turner & Speiser, St. Joseph, for appellant Anna L. Montgomery.

Robert E. Douglas, St. Joseph, (Brown, Douglas & Brown, St. Joseph, of counsel), for respondent.

BLAIR, Judge.

This is an action for a declaratory judgment filed by Samuel L. Seltzer, as trustee under a trust agreement, invoking the equity power of the Circuit Court of Buchanan County to declare his authority and duty as trustee by adjudging the distribution he should make of funds held by him pursuant to the trust agreement and funds to come into his possession as trustee under that agreement in the future.

The record does not affirmatively disclose that the amount in dispute, independent of all contingencies, is in excess of $15,000.00 and we may not indulge in speculation or conjecture that it does exceed that amount, for a mere chance that it may does not oust our jurisdiction and vest jurisdiction in the Supreme Court. We have jurisdiction. Sec. 477.040, V.A.M.S.; Jackson County Public Water Supply Dist. No. 1 v. Ong Aircraft Corp., Mo., 388 S.W.2d 893; Warmack v. Crawford, Mo., 192 S.W.2d 406; McCaskey v. Duffley, 335 Mo. 383, 73 S.W. 2d 188; 8 Mo.Digest, Courts, ▮▮▮▮▮

As we view this controversy, there is no need to summarize the pleadings. A recital of the facts we deem relevant and rulings on the contentions of the parties will present the questions on this appeal adequately. Anna K. Craig died in 1948 in Chicago, Illinois. By her last will and testament she made eight specific bequests of personalty, each to a different person. By the residuary clause of her will she bequeathed and devised "all of the rest, residue and remainder of my estate, of every kind or nature whatsoever, wheresoever situated," * * * "unto James Mattalina, of Chicago, Illinois, his heirs and assigns forever, in appreciation for the many years of faithful services and the many kindnesses extended to me by him." James Mattalina was her chauffeur and by this residuary clause he was given the bulk of her estate consisting of substantial personal property and a large number of tracts of real estate in Illinois, Missouri, Kansas, Texas and Oklahoma. Anna Niemer and Guy Barr, as heirs at law of Anna Craig, commenced a suit in Chicago, Illinois, to set aside the will of Anna K. Craig.

On December 18, 1948, Anna Niemer, Guy Barr and James Mattalina entered into a "Settlement Contract" in order "to settle, compound and compromise said suit and to agree upon a distribution of the net assets of the estate of Anna Craig." By the terms of this settlement contract it was agreed that the personal property of Anna K. Craig should be reduced to cash and after payment of specific legacies, taxes, administrative costs and other expenses, the remainder was to be divided into two shares. Anna Niemer and Guy Barr received one-half of the remainder plus $3,000.00 as their share and James Mattalina received what then remained as his share. The settlement contract further provided that James Mattalina would convey in trust to Samuel L. Seltzer, as Trustee, "all of the real estate owned by Anna Craig at the date of her death and devised to James Mattalina" by the residuary clause of her last will and testament. All of the real estate owned by her at the date of her death had been devised by her residuary clause to James Mattalina and thus all of her real estate was to be placed in the trust. The life of the trust was to be three years. During the life of the trust the trustee was to be given authority to "collect the rents, issues and profits" from the real estate and to lease it or to sell any parcel of it with the consent of the beneficiaries and at the expiration of the trust he was required to sell all of the real estate then remaining after due notice in writing to the beneficiaries. During the life of the trust, and after its expiration, the trustee was to distribute the "proceeds and avails" of the trust, "whether of income or principal", to the beneficiaries in the following proportions: James Mattalina, ⅜ths; Arthur Abraham (his attorney), ⅛th; Anna Niemer, ¼th and Guy Barr, ¼th. It was agreed that the suit contesting the will of Anna Craig would be dismissed upon the execution of the trust agreement by James Mattalina.

On December 20, 1948, just two days after the execution of the settlement contract, James Mattalina by several deeds conveyed to Samuel L. Seltzer, as Trustee, all of the real estate of Anna Craig as required by the settlement contract. The trust agreement prescribed by the settlement contract was executed on that same day in accordance with its terms. In the outset the trust agreement recited that it was executed pursuant to the terms and

conditions of the settlement contract which "settles and determines the issues raised" by the suit which had been brought to contest the will of Anna Craig. Later in Article Sixth the trust agreement declared that the trust was being created by the donor in compliance with the terms of the settlement contract previously referred to in the outset of the trust agreement and that the trust was created for the express purpose of bringing about an orderly liquidation of the real estate conveyed by Mattalina to Seltzer in trust and a division of the "proceeds and avails" of such real estate according to the terms of the settlement contract. It was provided that no beneficiary of the trust had any right or title to any part of the real estate but only an interest in the earnings, avails and proceeds of the trust. The rights of the beneficiaries were to "be deemed to be personal property and assigned and transferred as such". There was also a provision that in the event of the death of any of the beneficiaries his or her share should be paid to "his or her executor, administrator or assigns."

Subsequently on April 19, 1951, an amendment to the trust agreement was executed by all of the interested parties. After reaffirming the original settlement contract and reciting that the trust agreement had been entered into pursuant to its terms and conditions, the amendment substantially reiterated the terms of the trust agreement, provided for an extension of the life of the trust and declared: "In the event of the death of any of said persons herein named as beneficiaries, that share to which such deceased beneficiary would have been entitled, had he or she survived, shall be distributed by the Trustee to such person or persons as such deceased beneficiary shall by his or her Last Will and Testament in writing appoint, and in default of such appointment, to those persons who are entitled to the personal estate of such deceased beneficiary under the statutes of descent in force and effect in that state of which

such deceased beneficiary was a resident at the time of his or her death."

By the express terms of both the trust agreement and its amendment all beneficiaries were given the right to "sell, assign and transfer his or her interest" in the trust. The only limitation on this right was one for the protection of the trustee. It was required that the instrument of sale, assignment and transfer be "in a form satisfactory to the trustee" and that it should not be effective or binding upon the trustee until the original instrument, with the signature properly identified and guaranteed, was furnished to the trustee, together with the name and address of the purchaser.

Prior to the execution of the settlement contract and the trust agreement the will of Anna Niemer merely provided that in the event of her death before the death of Anna Craig, "I hereby give, devise and bequeath to Frederick Schroeder and Cecile Schroeder, his wife, or if either of them should predecease me, then to the survivor, any property that may be coming to me through the will of Anna Craig" and stated that it was her desire that any property coming to her or her estate through the will of Anna Craig should go to Frederick and Cecile Schroeder. After the execution of the settlement contract and trust agreement Anna Niemer rewrote her will five times, in May, 1949, March, 1952, April, 1956, December, 1957 and May 1958. The will of May 1958 was her last will and testament. In each of these wills her residuary clause was identical: "I give, devise and bequeath all of the rest, residue and remainder of my estate to Frederick Schroeder and Cecile Schroeder, his wife, or if either of them should predecease me, then to the survivor. Such residue and remainder of my estate shall include, although it is not limited to, any property that may be coming to me or my heirs, or such persons as may be named in my will, from Anna K. Craig, of Chicago, Illinois, or her estate, or under the terms of her will, and

which may not have been paid to or received by me at the time of my death. It is my desire that whatever real or personal property would go to me or my estate or my legatees through or under the will of Anna K. Craig, go to Frederick Schroeder and Cecile Schroeder as aforesaid." Cecile Schroeder predeceased Anna Niemer. Anna Niemer died on February 1, 1961, a resident of St. Joseph, Missouri, predeceasing Frederick Schroeder who is now dead. Catherine Schroeder, his daughter, is his surviving beneficiary.

The funds involved in this action are those which have come into the hands of the trustee and those which may come into his hands in the future under the trust agreement and its amendment and which would have been payable to Anna Niemer as they came into his hands if she had continued to live. The principal question in this controversy is whether Anna Niemer by her last will exercised the power of appointment provided for by the amendment to the trust agreement or failed to do so. The trial court declared and adjudged that she did exercise that power of appointment by her last will and that Catherine Schroeder is entitled to such funds as the surviving beneficiary of Frederick Schroeder. The trial court also found that Anna Niemer was survived by Leon T. Ashton, Mary Cowles Moore, Guy E. Chestnut, Jr., "second cousins once removed", and Anna Lee Montgomery, "a second cousin", and that if Anna Niemer had failed to exercise her power of appointment, these cousins would have been entitled to receive the proceeds of the trust. There is no question on this appeal that these cousins are entitled to the trust funds involved if Anna Niemer failed to exercise her power of appointment. The record shows that Guy E. Chestnut, Jr. had assigned whatever interest he might have in the funds to Leon T. Ashton. This accounts for the absence of Guy E. Chestnut, Jr. from this appeal which is brought by Leon T. Ashton, individually and as assignee of Guy

E. Chestnut, Jr., Mary Cowles Moore and Anna L. Montgomery.

■ There can be no question that this action for declaratory judgment is an appropriate one to accomplish an adjudication of this controversy. Star-Times Publishing Co. v. Buder, Mo., 245 S.W.2d 59, 63. This case is to be tried by this court de novo and we must reach our own conclusions. Ash Grove Lime & Portland Cement Co. v. White, 361 Mo. 1111, 238 S.W.2d 368; Govro v. Beyer, Mo.App., 385 S.W.2d 367. Since we discern no dispute between the parties concerning the facts we have recited, and they suggest none, our question becomes merely one of law. Quite correctly the parties are in agreement that an execution of a power will be held to have been intended by a will which (1) refers to the power itself or (2) makes a reference to the subject of the power or (3) where the will itself is one that cannot operate except as an execution of the power. Collier's Will, 40 Mo. 287, 328; Owen v. Switzer, 51 Mo. 322, 330; Owen v. Ellis et al., 64 Mo. 77, 82; Papin v. Piednoir, 205 Mo. 521, 104 S.W. 63, 67; 41 Am.Jur., Powers, Sec. 45, p. 836; 72 C.J.S. Powers § 40, pages 442–444; Thompson on Real Property, 1961, Replacement, Vol. 4A, Sec. 2,028, p. 703.

Did the will of Anna Niemer effectually exercise the power of appointment created by the amended trust agreement as the trial court found or did it fail to do so as appellants argue? We need not concern ourselves with determining whether the will meets all of the three criteria set forth above as individually constituting the exercise of a power of appointment, for if the will meets any one of those criteria, Anna Niemer exercised her power of appointment.

■■ The burden to establish that Anna Niemer executed her power of appointment by her will rests on Catherine Schroeder who is claiming it was executed. 72 C.J.S. Powers § 40, p. 451. Appellants con-

tend that the trust agreement and its amendment conferring the power of appointment and the will of Anna Niemer are all clear and unambiguous and we must look to these documents alone, and nothing else, to determine whether Anna Niemer executed her power of appointment. We notice that appellants refer to the settlement contract we have described as being dated June 30, 1947. We discover no settlement contract of that date in the record. The only settlement contract we have discovered and which entered the evidence is the one we have summarized which was dated December 18, 1948, two days before the execution of the original trust agreement. The record discloses that Anna K. Craig did not die until 1948 and obviously there was nothing concerning her estate to be settled before that year. We therefore assume that the date employed by appellants is a mistaken one. We agree with appellants that the trust agreement and its amendment are clear and unambiguous and require no construction. On the other hand, we disagree with their contention that the provision of the will of Anna Niemer which is in question is clear and unambiguous. We believe it is ambiguous, as we will presently develop, and that its construction requires us to consider extrinsic evidence.

In determining whether a power of appointment has been executed by will the admission and consideration of extrinsic circumstances and facts is governed by the general rules applicable to the admissibility of evidence in the construction of wills. 72 C.J.S. Powers § 40, pages 451–452. Sec. 474.430, V.A.M.S. requires that all courts "shall have due regard to the directions of the will, and the true intent and meaning of the testator". In determining the true intent and meaning of testators, courts first must look to the will, but if the language of the will is determined to be ambiguous they are authorized to look to surrounding facts and circumstances. Lang v. Estorge, Mo., 242

S.W.2d 50, 53. The language of Anna Niemer's residuary clause which is claimed to be an exercise of her power of appointment, standing alone, is not ambiguous. It clearly provides that she gives, devises and bequeaths "any property that may be coming to me" * * * "from Anna K. Craig, of Chicago, Illinois, or her estate, or under the terms of her will, and which may not have been paid or received by me at the time of my death." On the other hand, we believe the intent and meaning of this provision becomes ambiguous when facts not disclosed by the terms of the will are considered. Anna Niemer technically had nothing coming to her from Anna K. Craig, of Chicago, Illinois, or her estate, or under the terms of her will, when she wrote the provision in question into her last will on May 6, 1958. Under the terms of the settlement contract of December 18, 1948, the contest of Anna K. Craig's will was dismissed, the will was admitted to probate, the personal property, except for certain specific bequests to others, was divided among the contending parties, and James Mattalina, the residuary legatee and devisee who originally stood to inherit the bulk of Anna K. Craig's personal property and all of her real estate, conveyed to Samuel L. Seltzer, as trustee, all of Anna K. Craig's real estate in trust for James Mattalina, Arthur Abraham, Guy Barr and Anna Niemer, as beneficiaries, each with the right to a fixed proportion of the income and proceeds of the trust and each with the right to sell, assign and transfer his interest in the trust. We believe these circumstances create a latent ambiguity in the language employed by Anna Niemer in the provision of her will in question. In Schubel v. Bonacker, Mo., 331 S.W.2d 552, 556, a testator clearly bequeathed to named persons $10,000 in bank stock of the "Industrial Bank of St. Louis". The court said "The meaning of this provision becomes doubtful, or ambiguous, only when facts not disclosed by the terms of the will are considered, namely, that the testa-

tor did not and never did own any stock in the Industrial Bank of St. Louis. In other words, there is a latent ambiguity in the language used."

 We acknowledge the general principle that extrinsic evidence is not admissible to vary, contradict or add to the terms of a will, or to show a different intention on the part of the testator than that disclosed by the language of the will. Yet extrinsic evidence is admissible to explain latent ambiguities in a will and to show the true intent and meaning of the language employed. "In every case the court is entitled to be placed in possession of all the information which is available of the circumstances of the estate and family of testator when he made his will, to the end that the court may be in his situation as nearly as may be, and may interpret and understand the will as he would if he were alive. * * * Where the ambiguity is latent, it is created by evidence of extrinsic facts, and the same evidence is admissible to remove it." Mc-Mahan v. Hubbard, 217 Mo. 624, 118 S.W. 481, 485; Willard v. Darrah, 168 Mo. 660, 68 S.W. 1023, 1024; Annotation, 94 A.L.R. 46, 131, 163.

 For example, in Schubel, supra, where the testator bequeathed $10,000 in bank stock in a named corporation and did not and never did own any stock in that corporation, the Supreme Court ruled that extrinsic evidence was admissible to remove the latent ambiguity in the language employed in the will. It said "It has expressly been held that where there is a latent ambiguity or inaccuracy in the description of the corporate stock, bonds or other securities, extrinsic evidence is admissible to identify the subject of the gift. Paulus v. Besch, 127 Mo.App. 255, 104 S.W. 1149; Waters v. Hatch, 181 Mo. 262, 79 S.W. 916; Annotation, 94 A.L.R., at pages 46–55; 95 C.J.S. Wills 641 c. * * * We think it is clear from the evidence that by the bequest of stock in the Industrial Bank of St. Louis, the testator had reference to and in-

tended to bequeath the stock, then worth approximately $10,000, owned by him in Industrial Bancshares Corporation; that it was proper for respondent to show and establish this intent by extrinsic evidence; and that the ruling of the trial court in respect to this provision of the will was correct." Likewise, where there is a latent ambiguity or inaccuracy in the description of real estate devised by a will, extrinsic evidence is admissible to create the ambiguity and to remove it by identifying the subject of the devise. Annotation, 94 A.L.R. 131 and Missouri cases there collected; Stuesse v. Stuesse, Mo., 377 S.W.2d 389, 391; Mudd v. Cunningham, Mo., 181 S.W. 386; McMahan v. Hubbard, 217 Mo. 624, 118 S.W. 481, 485; Willard v. Darrah, 168 Mo. 660, 68 S.W. 1023, 1024; Creasy et al. v. Alverson et al., 43 Mo. 13, 21. These last decisions demonstrate the rule in this state that a testator may sometimes devise lands that he does not own and that extrinsic evidence is admissible to create a latent ambiguity in his will and to remove it by showing that he owned other lands which he actually intended to devise. Under these rulings we hold that all of the evidence recited in this opinion is competent to create a latent ambiguity in the questioned provision of the will of Anna Niemer, and that it does so, and that such evidence is properly to be considered by us in determining whether it removes that ambiguity.

 The authorities we have cited are not precisely parallel on the facts, but we are convinced that they do point the way. The first sentence of Anna Niemer's residuary provision was a general residuary clause and was sufficient, without more, to bequeath and devise all of the residue of her property to Frederick and Cecile Schroeder or the survivor. It said "I give, devise and bequeath all of the rest, residue and remainder of my estate to Frederick Schroeder and Cecile Schroeder, his wife, or if either of them should predecease me, then to the survivor." We agree with appellants that the general rule is that a power of appointment, in the absence of a statute, is not exe-

cuted by a general residuary clause in the will of the donee. Annotations, 32 A.L.R. 1395; 91 A.L.R. 453. Conceding for the purpose of this case that the first sentence of Anna Niemer's residuary provision, a general residuary clause, was not sufficient to exercise her power of appointment, Anna Niemer's residuary provision did not stop with that language. The second sentence said "Such residue and remainder of my estate shall include, although it is not limited to, any property that may be coming to me or my heirs, or such persons as may be named in my will, from Anna K. Craig of Chicago, Illinois, or her estate, or under the terms of her will, and which may not have been paid to or received by me at the time of my death."

Appellants say that Frederick Schroeder's executor (Frederick Schroeder survived Anna Niemer but died before distribution was made to him under her will) received for Schroeder's estate $7,769.03 plus certain old coins and jewels and then they argue that the second sentence of the residuary provision just quoted means nothing and wills nothing because (1) the money, coins and jewels distributed to Schroeder's estate constituted all Anna Niemer intended Schroeder to receive, (2) this second sentence must be construed literally, (3) by such literal construction it can refer only to any property coming to Anna Niemer from Anna K. Craig, of Chicago, Illinois, or her estate, or under the terms of her will, and (4) Anna Niemer had nothing coming to her from Anna K. Craig, or her estate, or under the terms of her will. They argue that this provision cannot possibly refer to any property in the trust because the proceeds of that property were coming to Anna Niemer "by virtue of a trust settlement made by one James Mattalina, and not from Anna K. Craig or her estate."

Of course, Anna Niemer had nothing coming to her under the terms of the *will* of Anna K. Craig for that will had been admitted to probate in 1948 after the execution of the settlement contract and pre-

sumably before the execution of the trust agreement. By the terms of Anna K. Craig's will, Anna Niemer was to receive only a bequest of $1,000.00. By the terms of the settlement contract, she waived that bequest as one of the considerations for the more favorable terms of that settlement. The language relating to property coming to her under Anna K. Craig's will, according to this record, was first written in her will of 1947 before the death of Anna K. Craig and of course before the execution of the settlement contract and the trust agreement. It was carried into her five subsequent wills, including her last one, apparently by inadvertence. We can give it no meaning because there is obviously nothing on which it can operate. Schee v. Boone, 295 Mo. 212, 243 S.W. 882.

On the other hand, we believe that appellants' argument that Anna Niemer meant nothing by "property that may be coming to me" from "Anna K. Craig of Chicago, Illinois, or her estate," and did not intend to refer to her interest in the trust is wholly theoretical and not logical and is inconsistent with reality. We are not here tracing a title. We are undertaking to determine substance and not shadow, and the true intent and meaning of the questioned provision. We believe there is no substance in the suggestion that any of the assets of the trust *really* came from anywhere except from Anna K. Craig's estate. Of course, they came through James Mattalina as the conduit from Anna K. Craig's estate to the trust, but they did not come to the trust as a result of his generosity or bounty or because Anna Niemer or Guy Barr agreed that their share was Mattalina's property. They came to the trust only because Guy Barr and Anna Niemer were contesting Anna K. Craig's will, by force of which Mattalina stood to receive the bulk of Anna K. Craig's personal property and all of her real estate. To rid himself of the contest and to salvage something for himself and his attorney he agreed to a division of the personal property far less advantageous to him than that provided by the will and he agreed that all of

Anna K. Craig's real estate should be placed in trust in compromised proportions whereby he and his attorney received altogether a ⅜ths interest and Guy Barr and Anna Niemer each received a ¼th interest. The abandonment of the will contest by Anna Niemer and Guy Barr and the settlement contract entered by them with Mattalina was simply a device for that division of the personalty and for placing all of Anna K. Craig's real estate in trust for the express purpose of bringing about its orderly liquidation after it was conveyed by Mattalina to Seltzer in trust and a division of its "proceeds and avails" in agreed proportions according to the terms of the settlement contract and the trust agreement. The settlement contract was a clear recognition and understanding by the parties of the right of Guy Barr and Anna Niemer to share in the assets of Anna Craig's estate and a clear relinquishment by Mattalina of their share to which he would have otherwise been entitled under the contested will. We ask ourselves: Why then would not Anna Niemer reasonably regard her interest in the trust as one coming to her from the estate of Anna K. Craig, and describe it that way, instead of regarding it as an interest which came to her from Mattalina when she wrote her last will? Embracing the realities and not the shadows of this controversy, why should we not regard her interest in the trust in the same light we believe she clearly did?

■ In our judgment, the circumstance that Anna Niemer's will did not specifically refer to her interest in the trust as such is not conclusive that she made no reference to the *subject* of the trust. In Papin v. Piednoir, 205 Mo. 521, 104 S.W. 63, real estate was conveyed by deeds in trust to a trustee for the sole use of the beneficiary. The trustee was directed to sell the real estate if the beneficiary requested him to do so. The deeds conveying the property to the trustee provided that the property, if not disposed of at the request of the beneficiary during her lifetime, should be conveyed at her death by the trustee to such

person as she might by her last will direct. The Supreme Court ruled that this language created a power of appointment in favor of the beneficiary. The trust deeds further provided that if the beneficiary by her last will failed to direct the trustee to convey the property at her death to a person of her selection, then the trustee was to convey the real estate to named persons. By her last will she referred to the real estate, which was still in the trust, as "my real estate situated in the City of St. Louis, Missouri, on Pine Street between Twelfth and Thirteenth streets" in undertaking to exercise her power of appointment. Although she referred by her will to the real estate only in this manner, and made no reference whatever to her interest in the trust as such, it was ruled that she had actually referred to the subject of the trust by the language she employed and that she had validly exercised her power of appointment. We acknowledge that the facts adjudged by this ruling do not exactly parallel the facts with which we are dealing, but this ruling is clear authority that a testator with a power to appoint another by will to be the recipient of his interest in a trust is not absolutely required to refer to his interest in the trust as such in undertaking to exercise his power of appointment. It is sufficient if the reference he makes in his will is really to the subject of the trust when considered in the light of the language seeking to exercise the power of appointment and the competent extrinsic circumstances.

■ Under the terms of the amendment to the trust agreement, Anna Niemer had the right during her lifetime to sell, assign and transfer her interest in the trust as well as the right to dispose of it by a will exercising her power of appointment. She also had the right to decline, to sell, assign and transfer her interest and to fail to exercise her power of appointment by will and, regarding that interest, to die intestate and to allow it to go to those entitled to her personal estate under the statutes of descent and distribution in force in this state at the time of her death. But

there is a presumption that testators intend to dispose of their entire estate and not to die intestate as to any part of it, and where a provision of a will is fairly open to more than one construction, and this one is, the construction resulting in partial intestacy will not be adopted if it can be avoided by any reasonable construction, 29 Mo.Digest, Wills, 449. This presumption is by no means conclusive, and is of no weight at all if a contrary intent appears, but it is of some weight if the issue is debatable. Here the issue is debatable. Moreover, it is a rule that in determining the true intent and meaning of a will courts must give to every word, phrase and sentence, some meaning if possible, and in doing so they must be guided by surrounding circumstances. In re Yeater's Trust Estate, Mo. App., 295 S.W.2d 581; Lehmann v. Griffin, 224 Mo.App. 657, 31 S.W.2d 271; Mercantile-Commerce Bank and Trust Co. v. Binowitz, Mo.App., 238 S.W.2d 893. On this record and under these rules we cannot adopt appellants' theory that Anna Niemer included the second sentence of her residuary provision in her will intending it to mean absolutely nothing.

 On the other hand, taking into account the presumption against a testator intending partial intestacy and our duty to avoid a construction of the questioned provision of Anna Niemer's will which reaches that result if it can be avoided by any reasonable construction, our duty to give to every word, phrase and sentence some meaning if possible in determining the true intent and meaning of the questioned provision, and in doing so to be guided by the extrinsic circumstances, and considering all of the extrinsic evidence that is recited in this opinion, we believe that the questioned provision, "any property that may be coming to me" from "her (Anna K. Craig's) estate," elucidated by the extrinsic evidence, clearly and .adequately refers to the subject of the power of apointment, Anna Niemer's interest in the trust, requires a ruling that the power of appointment was validly exercised and compels a rejection

of appellants' theory, as hypertechnical, that Anna Niemer had nothing coming to her from the estate of Anna K. Craig because her interest in the trust had come from the Craig estate through Mattalina as a mere conduit from that estate to the trust.

We have analyzed all of the authorities cited by the appellants. We acknowledge the validity of the principles they announce. Sufficient it is to say that, added all together, they cannot warrant a different decision than the one we make on the record before us.

The judgment of the trial court is affirmed.

All concur.